## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

DENNIS G. DEPPE
    Plaintiff,

v.

SANDRA M. SOVINSKI, (Individually)
SVETLANA S. SHTROM, (Individually)
    Defendants.

_____/

CASE NO.:

6:23-CV-1484-WWB-EJK

For Jury Trial

*[stamp: 2023 AUG -2 PM 2:45 CLERK, US DISTRICT COURT MIDDLE DISTRICT FLORIDA ORLANDO, FL — FILED]*

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Dennis G. Deppe files this Complaint against the Defendants Sovinski M. Sovinski and Svetlana S. Shtrom, both employees of the University of Central Florida, for violations pursuant to Title 42 U.S.C. § 1983 of civil rights under the 1st, 5th, and 14th U.S. Constitutional Amendments, for civil conspiracy to commit perjury with the U.S. Patent and Trademark Office, tortious interference with Plaintiff's expectation of an economic advantage, tortious interference with Plaintiff's employment expectancy, damage to Plaintiff's property, damage to Plaintiff's professional reputation, and intentional infliction of emotional distress.

In support of this Complaint, Plaintiff respectfully alleges as follows:

## JURISDICTION AND VENUE

1.     Jurisdiction is proper to this court pursuant to 28 U.S.C. §1331 (federal question) and 28 U.S.C §1343 (civil rights), according to the facts of the matter that deal with questions of U.S. federal law under 42 U.S.C. §1983 pursuant to the 1st, 5th, and 14th U.S. Constitutional Amendments. The federal district court has supplemental jurisdiction through 28 U.S.C. §1367 over state law claims that involve civil conspiracy to commit perjury with the U.S. Patent and Trademark Office (USPTO), and tortious interference of business and employment relations.

2.     Venue is appropriate in this Court pursuant to 28 U.S.C. §1391 as actions took place in Orange County in the middle district of Florida, Plaintiff and to the Plaintiff's best knowledge and belief Defendants have residences in the middle district of Florida, and, to the Plaintiff's best knowledge and belief, each are citizens in the middle district of Florida, and Defendants are employed by the University of Central Florida (UCF) in Orange County.

## NATURE OF THE CASE

3.     The Plaintiff, Dr. Dennis Deppe, is a scientist and entrepreneur with more than thirty years-experience in research, publishing and presenting scientific results, patenting inventions, and technology start-ups. He has worked for high technology companies, multiple universities, his own technology start-ups, and as a consultant for industry.

4.     Information and records have now been provided to U.S. federal investigative offices, some of which are explained in **Exhibit 1**, that provide

evidence that the Plaintiff and Plaintiff's newest laser inventions known as oxide-free vertical-cavity surface-emitting lasers (VCSELs) described below became targeted in an organized government crime scheme involving bribery and intellectual property theft led by the U.S. military and three universities, the University of Illinois, The University of Texas at Austin, and the University of Central Florida (UCF). The military and universities used the high value of the Plaintiff's oxide-free VCSEL invention to overlap and involve their intellectual property theft schemes with elected officials including in state government and White House administrations.

5.     The Plaintiff has an earlier laser invention that has become the world's smallest commercial laser and is widely known as an oxide VCSEL. The oxide VCSEL's very small size allows the device to be activated with very low electrical power and switch its laser output at very high speed. These features have made the oxide VCSEL a critical component used in high-speed military optical fiber links and in high-speed switching in data centers that drive the internet.

6.     The oxide VCSEL is the key laser technology used in 3-D optical sensing being developed by Apple, Facebook, Microsoft and others for their cellphones and headsets for use in the expected coming of the "Meta-verse," in military data links used in jet fighters and other military platforms, optical sensors for global positioning systems, laser sensing in self-driving vehicles, automotive sensing, and communications. The oxide VCSEL is now produced in many countries and in 2021 had a global market of $1.5B.

7.     One of the military funding agencies known as the Defense Advanced Research Projects Agency (DARPA) began projects to try and replace the oxide VCSEL, and make even smaller laser devices. The DARPA program monitors and a number of university professors became angered after the Plaintiff published and presented scientific findings over several years showing that DARPA and the university professors had used and published false scientific claims in their projects.

8.     **Exhibit 2** shows one of the publications from university research funded by DARPA that the Plaintiff's own analysis shows contains scientific errors and scientific misconceptions about how lasers work that completely counter the conclusions of **Exhibit 2**'s authors.

9.     In the meantime, the Plaintiff had invented and had started the company, sdPhotonics LLC, developing an improved replacement for the commercially successful oxide VCSEL. The Plaintiff designed his new VCSEL invention to be oxide-free to solve remaining problems caused by the oxide used in the oxide VCSEL. The new oxide-free VCSEL can be made much smaller than an oxide VCSEL, consume less power, work at even higher speed, and be more reliable.

10.     The Plaintiff's company sdPhotonics spent approximately $7M to develop the Plaintiff's new oxide-free VCSEL invention. Once the Plaintiff and his company had performed and paid for the research and development to develop record setting oxide-free VCSEL prototypes, developed and prosecuted the

4

patents, and established the material supply chains needed to manufacture and produce the new oxide-free VCSEL, the military and universities took their actions as part of their intellectual property theft schemes targeting the Plaintiff and his company with retaliation to damage the company's business operations to try to take over the company's invention.

11.    The Plaintiff's company performed its initial research and development in research facility space it leased from the UCF Photonics Incubator that housed the company's advanced crystal growth equipment the company used to develop and refine the new oxide-free VCSEL invention. The Plaintiff also worked part time on the UCF faculty while his company was researching and developing the oxide-free VCSEL invention.

12.    From Jan. 2015 through August, 2018 the Plaintiff worked only for sdPhotonics on military contracts developing the oxide-free VCSEL invention for commercial products. The company's annual revenue during this time and just after averaged ~$1M/yr, and investors estimated the company's value at $25M based on oxide-free VCSEL inventions, intellectual property, business plan, and prototype demonstrations.

13.    Then, in the Summer, 2019, the military program monitors working with the Plaintiff's company sdPhotonics, along with the University of Illinois, the University of Central Florida, and The University of Texas at Austin, began the retaliation. The military and universities had earlier set up fraud schemes even predating 2015, that they then used as part of their intellectual property theft. The

information and records provided to investigators provide evidence the military and universities attempted to complete the take-over of the oxide-free VCSEL invention while the Trump administration remained in the White House.

14.    Beginning in the Summer, 2019, the military program monitors used fraudulent government contracts they issued to sdPhotonics under the U.S. Small Business Innovative Research (SBIR) program to learn sdPhotonics' trade secrets, obtain its actual prototypes of the company's VCSEL inventions, and learn details of the company's business plans involving the oxide-free VCSEL invention.

15.    In the same time period, as part of UCF's role in the military's alleged perjury scheme with the U.S. Patent and Trademark Office (USPTO), Ms. Sovinski and Ms. Shtrom began filing false documents with the USPTO on sdPhotonics' patents covering the oxide-free VCSEL invention.

16.    Like the other parts of the military schemes, Ms. Sovinski and Ms. Shtrom filed their false documents with the USPTO timed just after the patents from the patent applications had issued, or were about to issue, in which Ms. Sovinski and Ms. Shtrom would claim retroactively that the Plaintiff's company had no ownership in the oxide-free VCSEL invention being patented.

17.    The initial damage due to Ms. Sovinski's and Ms. Shtrom's false documents filed with the USPTO on the Plaintiff's oxide-free VCSEL inventions was not too great. To further damage the company's ability to do business using its new inventions, Ms. Sovinski and Ms. Shtrom continued their actions in concert with the military actions by continuously filing false ownership documents on

patents and patent applications owned or jointly owned by sdPhotonics. They continued their actions filing false documents and committing perjury with the USPTO at least through February, 2022.

18.    The Plaintiff and his company, sdPhotonics, were engaged in research and development contracts not only with the University of Central Florida, but also with the military and the University of Illinois and The University of Texas at Austin. Professors and administrators from each of the three universities participated with the military in the military's expansive organized crime scheme, apparently emboldened that their actions would be protected by high-ranking U.S. and state elected officials, and by the promise of research contracts and licensing agreements expected from the Plaintiff's VCSEL inventions.

19.    This Complaint is brought under Title 42 U.S.C. § 1983 due to the actions by the Defendants Ms. Sovinksi and Ms. Shtrom that violate the Plaintiff's civil rights protected by the 1st, 5th, and 14th U.S. Constitutional Amendments, by retaliating with the military due to the Plaintiff's reporting of scientific findings that contradict the claims made by the military and universities, by retaliating when Plaintiff reported UCF's actions with the military to the proper authorities along with scientific fraud uncovered at UCF being used to obtain government funding, all while acting clothed under their state authorities, to repeatedly file false ownership documents with the USPTO with no due process on the inventions for which the Plaintiff and Plaintiff's company has ownership rights, and for their violations of Florida state tort laws in their actions.

20.    Ms. Sovinksi and Ms. Shtrom took their actions in retaliation in participation and emboldened by the military and additional government involvement to damage the valuation and business operations of Plaintiff's company developing the Plaintiff's oxide-free VCSEL laser inventions, to damage his future employment with his company, and to withhold the Plaintiff's income sharing with UCF on the oxide-free VCSEL inventions.

21.    This Complaint preserves without prejudice any and all additional claims to those presented that may arise and be brought from actions both disclosed and undisclosed in this matter.

## THE PARTIES

22.    Name of Plaintiff: Dennis Deppe, is a citizen of the state of Florida who has a residence at 5749 Aloma Woods Blvd., Oviedo, FL 32765.

23.    During the times relevant to this Complaint from 2015 onward Plaintiff was employed with the high technology start-up sdPhotonics LLC owned by the Plaintiff, and employed part of this time with the UCF.

24.    First named Defendant:  Sandra M. Sovinski, is a citizen of the state of Florida who has a residence at 4180 Saxon Dr., New Smyrna Beach, FL 32169. During all times relevant to this Complaint Defendant Sovinski has been an employee of the State of Florida with UCF, and identifies herself as UCF's Deputy General Counsel for Research.

25.    Second named Defendant: Svetlana S. Shtrom, is a citizen of the state of Florida who has residence at 516 Osprey Lakes Cir., Chuluota, FL 32766. At all

times material to this action Defendant Shtrom has been an employee of the State of Florida with the UCF, and listed on the UCF website as UCF's Director of the Office of Technology Transfer (OTT).

26.    The Defendants have personal liability because they have knowingly taken their actions involving civil rights violations clothed with the authority of the state, are alleged to have engaged in civil conspiracy in the commission of perjury with the U.S. Patent and Trademark Office, because their actions violate university rules and regulations that include UCF Regulations UCF-2.029 and the UCF Collective Bargaining Agreement, and because their unlawful actions are direct causes of Plaintiff's damages.

### FACTUAL ALLEGATIONS

**A.    Ms. Sovinski and Ms. Shtrom join UCF in retaliation to file false ownership documents retroactively with the USPTO on sdPhotonics patent applications after the patents on the oxide-free VCSEL inventions issued or were about to issue.**

27.    The Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

28.    The Plaintiff and his company sdPhotonics worked closely with Ms. Shtrom and the Office of Technology Transfer (OTT) she has directed at UCF, from the time period starting in about 2010 through and after 2018.

29.    Between 2015 and August, 2018 and after, sdPhotonics and UCF filed patent applications with sdPhotonics, LLC and the University of Central Florida Research Foundation, Inc. as joint applicants.

30.    Three of these include the three patent applications listed below that are at issue in this Complaint. These patents are known as the "parent patents."

31.    The parent patent applications were prosecuted with the U.S. Patent and Trademark Office (USPTO) to produce the three parent patents that include:

a.    U.S. Patent 10,033,156 entitled "Low Resistance Vertical Cavity Light Source with PNPN Blocking," filed Jul. 12, 2017 with priority date Jul. 13, 2016, and issued Jul. 24, 2018;

b.    U.S. Patent 10,483,719 entitled "Semiconductor Devices with Depleted Heterojunction Current Blocking Regions," filed Jul. 12, 2017 with priority date Jul. 13, 2016, and issued Nov. 19, 2019; and

c.    U.S. Patent 10,263,393 entitled "Vertical-Cavity Surface-Emitting Device with Epitaxial Index Guide," filed Feb. 15, 2018 with priority date Feb. 15, 2017, and issued Apr. 16, 2019.

32.    The joint patent applications listed above and filed by sdPhotonics and UCF also assigned ownership of the patent applications jointly to sdPhotonics and the University of Central Florida Research Foundation, Inc.

33.    The three parent patents listed above have "children patents" that are continuations of the parents that are also at issue in this Complaint.

34.    The filing of the jointly owned patent applications for the parent patents identified above were jointly authorized by sdPhotonics and by Ms. Shtrom's UCF OTT directed by Ms. Svetlana Shtrom, and by the Plaintiff.

35.    In addition, Ms. Shtrom is trained as an expert on UCF Regulations UCF-2.029, entitled "Patents, Trademarks and Trade Secrets," shown in **Exhibit 3.**[1]

36.    UCF's ability to assert ownership rights in the patents and patent applications with Plaintiff's company sdPhotonics that are at issue in this Complaint, are set by the UCF Regulations UCF-2.029 shown in **Exhibit 3**.

37.    The Plaintiff, UCF, and the UCF OTT discussed and reviewed the UCF regulations and specifically UCF Regulation UCF-2.029 prior to filing the joint patent applications at issue in this Complaint.

38.    sdPhotonics, UCF, Ms. Shtrom's UCF OTT, and the Plaintiff agreed to follow UCF Regulations UCF-2.029 in prosecution and ownership of the parent and children patent applications and patents at issue in this Complaint.

39.    A separate agreement between UCF and the Plaintiff signed in 2014, the 2014 UCF IP Agreement, is shown in **Exhibit 4,** in which UCF and Plaintiff confirm that UCF and the Plaintiff will adhere to UCF Regulations UCF-2.029 in patent filing and ownership.

40.    The first sentence in the 2014 UCF IP Agreement states:

"1. I have received and reviewed University Regulations UCF-2.029, entitled "Patents, Trademarks, and Trade Secrets." All terms in this agreement are defined pursuant to UCF-2.029."

---

[1] https://regulations.ucf.edu/chapter2.asp

41.    UCF and sdPhotonics agreed upon the procedures by which the jointly owned patents applications would be filed and prosecuted.

42.    UCF and sdPhotonics agreed that the patenting costs for the patent applications and patents at issue in this Complaint would be split between sdPhotonics and UCF.

43.    UCF Regulation UCF-2.029 requires that in the event that UCF has not paid 100% of the patent costs and 100% of the development costs of the invention being patented, UCF no longer has the ability to assert ownership rights in a patent application or patent, or in the invention being patented.

44.    Ms. Shtrom's UCF OTT confirmed to Plaintiff in meetings that after sdPhotonics had paid for patent and development costs, UCF Regulations UCF-2.029 would prevent UCF from changing the ownership assigned in the patent applications at issue in this Complaint that cover the oxide-free VCSEL invention.

45.    The UCF Regulation UCF-2.029 shown in **Exhibit 3** states at UCF-2.029(4)(d) that:

> "In the event the University asserts its rights in the **Invention, all costs and expense of patenting, developing, and marketing** the **Invention** and related activities, including those which may lead to active licensing of the Invention, **shall be paid by the University.**"

46.    UCF Regulations make it a violation of UCF-2.029(4)(d) in the event that UCF asserts or attempts to assert ownership rights, after Plaintiff's company split patent costs with UCF.

47.    The requirement of UCF to pay 100% of patent and development costs for inventions on which UCF may seek to assert ownership rights that are given in UCF-2.029(4)(d) is repeated verbatim in the UCF Collective Bargaining Agreement as shown in **Exhibit 5**.[2]

48.    The UCF Collective Bargaining Agreement states:

"In the event the University asserts its rights in the **Invention, all costs and expense of patenting, developing, and marketing** the **Invention** and related activities, including those which may lead to active licensing of the Invention, **shall be paid by the University**."

49.    sdPhotonics spent development costs for the oxide-free VCSEL invention that total ~$7M.

50.    sdPhotonics split patent costs with UCF that total an estimated $90K.

51.    sdPhotonics had its own additional costs for the patents covering the oxide-free VCSEL inventions at issue in this Complaint.

52.    As illustrated in the next exhibits, there was **not** confusion among sdPhotonics and UCF, or Ms. Shtrom's UCF OTT, or with the Plaintiff, in how the joint patent applications at issue in this Complaint would be jointly filed and owned by sdPhotonics and UCF.

53.    There was also **not** confusion among sdPhotonics and UCF, or Ms. Shtrom's UCF OTT, or with the Plaintiff, in how sdPhotonics would split UCF's costs for the patent applications and patents with UCF.

---

[2] https://www.collectivebargaining.ucf.edu/completecba.asp

54.     There was also **not** confusion among sdPhotonics and UCF, or Ms. Shtrom's UCF OTT, or with the Plaintiff, in how development costs for the oxide-free VCSEL invention would be paid for by sdPhotonics.

55.     **Exhibit 6** shows one of the emails in which Ms. Shtrom's UCF OTT authorizes their UCF patent prosecution counsel, Mr. Neil Jetter, to file the joint patent applications that are at issue in this Complaint as jointly owned by sdPhotonics and UCF.

56.     The email in **Exhibit 6** was sent to Mr. Jetter on July 11, 2017 by Mr. John Miner of Ms. Shtrom's UCF OTT instructing and authorizing Mr. Jetter to file the patents at issue in this Complaint as joint patent applications with joint assignment of ownership to sdPhotonics and UCF.

57.     Mr. Jetter did in fact file the patents cited by Mr. Miner in **Exhibit 6** as joint patent applications by sdPhotonics and UCF, and assigned the ownership jointly to sdPhotonics and UCF as instructed by Ms. Shtrom's UCF OTT.

58.     **Exhibit 7** shows how Ms. Shtrom's UCF OTT set up the invoicing for the patent costs.

59.     **Exhibit 7** shows that Ms. Shtrom's UCF OTT also actively participated in invoicing Plaintiff's company, sdPhotonics, for patent costs.

60.     The Plaintiff's company in fact paid for more than half of the patent costs for the patents at issue in this Complaint, because the company also had its own additional costs related to the patent applications filed jointly by sdPhotonics and UCF on the oxide-free VCSEL inventions.

61.     As shown in **Exhibit 8**, Ms. Shtrom and Mr. Thomas O'Neal, the UCF Associate Vice President of Research, signed off directly on the joint applications that sdPhotonics and University of Central Florida Research Foundation, Inc. were filing to cover the Plaintiff's oxide-free VCSEL invention.

62.     The USPTO requires that an Application Data Sheet (ADS) be filed with an original patent application that identifies the inventor, the applicants of the patent application, and the entities that are assigned the patent ownership rights.

63.     **Exhibit 9** shows the ADS for one of the patent applications at issue in this Complaint entitled "Semiconductor Devices with Depleted Heterojunction Current Blocking Regions," invented by the Plaintiff, for which the original application was filed on July 12, 2017.

64.     **Exhibit 9** shows the fourth page of the ADS lists an Applicant 1 as the University of Central Florida Research Foundation, Inc., and shows that Applicant 1 is an assignee of the ownership rights of the patent application.

65.     The ADS in **Exhibit 9** also shows the Applicant 2 designated on its fourth page.

66.     The ADS in **Exhibit 9** shows on the fifth page that Applicant 2 is sdPhotonics and that sdPhotonics is also an assignee of the ownership rights of the patent application.

67.     **Exhibit 10** shows the cover page of one of the patents at issue in this Complaint entitled "Low Resistance Vertical Cavity Light Source with PNPN

Blocking," that issued July 24, 2018 as U.S. Patent 10,033,156, and was filed Jul. 12, 2017 with priority date Jul. 13, 2016.

68.    The cover page of the patent shown in **Exhibit 10** shows that the applicants are sdPhotonics, LLC and the University of Central Florida Research Foundation, Inc., and that the assignees of the patent ownership rights are sdPhotonics LLC and the University of Central Florida Research Foundation, Inc.

69.    Ms. Sovinski also understood that Plaintiff's company had joint ownership with University of Central Florida Research Foundation of the patents covering the oxide-free VCSELs at issue in this Complaint.

70.    **Exhibit 11** shows an email obtained from public records requests that Ms. Sovinski sent to Ms. Shtrom on December 11, 2018.

71.    In her email to Ms. Shtrom shown in **Exhibit 11** Ms. Sovinski states:

"...Deppe is the only inventor, **but it still shows co-ownership with his company**, and I don't see any agreement as to why. I see the **courting license**, and I recall (and saw) that **the company has been splitting patent costs**, but it looks like maybe they are late now?"

72.    Ms. Sovinski's December 11, 2018 email in **Exhibit 11** to Ms. Shtrom shows that she knew that sdPhotonics had co-ownership of the patent applications and had split patent costs.

73.    Ms. Sovinski is trained as an expert on UCF Regulations UCF-2.029.

74.    Ms. Sovinski knew as shown by her email in **Exhibit 11** that any further attempt by UCF to assert ownership rights on the patent applications that

the UCF records showed to be co-owned with Plaintiff's company would violate UCF Regulations UCF-2.029.

75. **Exhibit 12** shows one of the assertions of ownership that Ms. Sovinski filed retroactively with the USPTO on the co-owned patents she references in her email to Ms. Shtrom shown in **Exhibt 11**.

76. Ms. Sovinski's document shown in **Exhibit 12** has a USPTO filing date of August 21, 2019.

77. Ms. Sovinski's new assertions of UCF ownership shown in **Exhibit 12** came only eight months after she sent her email shown in **Exhibit 11** to Ms. Shtrom, and admitted she knew that sdPhotonics had co-ownership of the patents and had split patent costs.

78. In her USPTO filing shown in **Exhibit 12**, however, Ms. Sovinski claims that the Plaintiff somehow tricked or deceived UCF.

79. **Exhibits 3** through **Exhibit 10** contradict that UCF was somehow tricked or deceived by Plaintiff.

80. Ms. Sovinski's email to Ms. Shtrom shown in **Exhibit 11** also undercuts her claims in **Exhibit 12** that UCF was somehow tricked or deceived.

81. Ms. Sovinski claims in **Exhibit 12** that UCF's patent prosecution attorney Mr. Jetter was also somehow confused or acted in error, and filed the patent application with sdPhotonics and UCF as joint applicants on his own without UCF input.

82.    These claims by Ms. Sovinski shown in **Exhibit 12** about Mr. Jetter being somehow confused or acting in error are undercut by the email shown in **Exhibit 6** from Ms. Shtrom's UCF OTT instructing Mr. Jetter to file the joint applications as jointly assigned in ownership.

83.    Ms. Sovinski claims in her assertions with the USPTO shown in **Exhibit 12** that UCF prosecution counsel:

> "carried on the improper co-applicant designation during the nonprovisional phase."

84.    **Exhibit 6** shows instead that Ms. Shtrom's UCF OTT instructed Mr. Jetter to file the patent applications as joint applications with joint assignment of ownership.

85.    Ms. Sovinski claims in her assertions with the USPTO shown in **Exhibit 12** that Mr. Jetter did **<u>not</u>** assign ownership rights in the patents stating:

> "UCF's prosecution counsel also did not record any assignment documents for the application…"

86.    Ms. Sovinski's statement that "UCF prosecution counsel also did not record any assignment documents for the application," contradicts the ADS shown in **Exhibit 9** that shows the joint ownership to sdPhotonics, LLC and University of Central Florida Research Foundation, Inc. was assigned in the ADS.

87.    Ms. Sovinski's statement that "UCF prosecution counsel also did not record any assignment documents for the application," also contradicts the cover

page of the issued patent shown in **Exhibit 10** that lists the assignees as sdPhotonics, LLC and the University of Central Florida Research Foundation, Inc.

88.    Ms. Sovinski omits any mention in her document filed with the USPTO shown in **Exhibit 12** that sdPhotonics had split patent costs, that sdPhotonics had ownership in the oxide-free inventions from past work that was separate from UCF, or that sdPhotonics had paid millions of dollars in development costs of the oxide-free VCSEL invention being patented.

89.    Ms. Sovinksi omits in her document shown in **Exhibit 12** any explicit mention that UCF follows UCF Regulations UCF-2.029 in determining patent ownership.

90.    Ms. Sovinski makes her USPTO filing shown in **Exhibit 12** while clothed in the authority of her position as UCF's Deputy General Counsel for Research to make such a filing, and that UCF is a state institution.

91.    Ms. Sovinski is not and was not the attorney of record in the patent prosecution with the USPTO, who at the time instead was Mr. Jetter.

92.    Ms. Sovinski relies on a large number of statements in her USPTO declaration shown in **Exhibit 12** that are false or misrepresent the facts.

93.    **Exhibit 13** shows a second copy of the same USPTO declaration filed by Ms. Sovinski shown in **Exhibit 12,** in which statements that are false or that misrepresent the facts are underlined in red.

94.    Ms. Sovinski's first sentence in **Exhibit 12** and **Exhibit 13** states "UCF owns all inventions in the field or discipline of each employee..."

95.    The statement that "UCF owns all inventions in the field or discipline of each employee" is false.

96.    UCF Regulations UCF-2.029 shown in **Exhibit 3**, and the UCF Collective Bargaining Agreement shown in **Exhibit 5**, do **not** make any such statement claiming that "UCF owns all inventions in the field or discipline of each employee."

97.    The additional underlined statements shown in **Exhibit 13** are false or misrepresent the facts related to ownership of the patents and patent applications at issue in this Complaint.

## B.    UCF retaliates with the military as UCF administrators work to suppress the science on ultra-tiny metal-cavity lasers to obtain government research funding.

98.    In the time period from 2010 through 2018 that overlapped the Plaintiff's and his company's research and development of the oxide-free VCSEL invention, the Plaintiff also performed scientific studies into semiconductor lasers and devices. The Plaintiff's scientific studies in general focused on semiconductor laser devices known as quantum dot lasers and nanocavity lasers, and were also funded by the military and other government agencies directly through UCF.

99.    The Plaintiff published and presented scientific articles on the scientific studies that overlapped the claims being made by DARPA program monitors who had heavily funded defense industries and numerous leading U.S. research universities in large programs to substantiate their DARPA claims and ideas.

100.    In that time period DARPA program monitors and universities became angered after Plaintiff began presenting and publishing research findings that contradicted the large research programs that DARPA had funded with both universities and defense industries.

101.    Beginning in about 2012, the Plaintiff began uncovering scientific errors in publications from university research projects that had been funded by DARPA. **Exhibit 2** shows an example of one of these papers published from a project DARPA funded at the University of California at San Diego entitled "Thresholdless nanoscale coaxial lasers," by authors M. Khajavikhan, et. al.

102.    When the Plaintiff analyzed the paper and the metal cavity laser device it described, he found the authors had confused the quantum mechanical physics that determines how threshold occurs in a semiconductor laser.

103.    The Plaintiff also found that the authors' specific design described in **Exhibit 2** would have caused extremely high internal loss in the laser device due to an electromagnetic effect of connecting the metal directly to the semiconductor laser active region, which was not disclosed in the paper.

104.    The Plaintiff found that either effects would prevent the "thresholdless" laser operation claimed by the authors of the paper in **Exhibit 2**, and that the authors' papers and the DARPA research projects attempting to create the device were based on scientific errors and misconceptions.

105.    The Plaintiff met multiple times from 2010 until 2018 with the UCF administrator, Dean Bahaa Saleh. Both Dean Saleh and the Plaintiff requested the meetings in different cases.

106.    Dean Saleh oversaw the UCF Photonics Incubator from which the Plaintiff's company, sdPhotonics, leased space to perform the company's research and development into the Plaintiff's oxide-free VCSEL inventions.

107.    The Plaintiff requested the meetings to ask Dean Saleh to address and help solve maintenance and safety issues in the UCF facilities the Dean oversaw, including the UCF Photonics Incubator being used by Plaintiff's company, sdPhotonics, to develop the oxide-free VCSEL inventions.

108.    However, the UCF Dean Saleh's interest in the meetings was to discuss with the Plaintiff his research findings on the metal cavity lasers described in **Exhibit 2,** and that were being pushed by the DARPA program monitors.

109.    In the meetings Dean Saleh asked the Plaintiff to stop making his presentations on his scientific findings on the metal cavity lasers because it was angering other professors Dean Saleh oversaw at UCF.

110.    The Plaintiff explained to Dean Saleh that the research being proposed was based on flawed science and that the scientific findings in the papers such as shown in **Exhibit 2** were incorrect, and that the authors were misrepresenting the science.

111.    Dean Saleh informed the Plaintiff that UCF faculty were seeking more funding on the metal cavity laser devices from DARPA and that he should take the

approach that "dishonesty in the science was a good thing if it benefited the university."

112.  Dean Saleh's reference to "benefiting the university" meant that UCF could use the incorrect scientific papers in any case to bring in additional government research funding into his college at UCF.

113.  These interactions caused long term conflicts between the UCF Dean Saleh and the Plaintiff, as the Plaintiff continued to present his findings at scientific meetings. The Plaintiff presented his findings at such a meeting in Puerto Rico in the Summer, 2017, where other researchers also acknowledged the DARPA work on the metal cavities had been based on scientific errors.

114.  The Plaintiff would later learn, as explained in **Exhibit 1**, that the military, UCF, and the other universities had targeted the Plaintiff's oxide-free VCSEL invention and his company developing the invention, sdPhotonics, in retaliation, intending to steal its intellectual property on the oxide-free VCSEL and damage the company's business operations to take over its VCSEL inventions.

115.  In September, 2018, Dean Saleh began the retaliation with demands through UCF Compliance that Plaintiff's company, sdPhotonics, immediately move out of the space it leased in the UCF Photonics Incubator overseen by Dean Saleh.

116.  The September, 2018 demand for the immediate move from the UCF Photonics Incubator came despite that sdPhotonics had just signed a new one-year lease extension with the UCF Incubator just one month prior in August, 2018.

117.    Dean Saleh's demand in September, 2018 for sdPhotonics to move out of the UCF Incubator also came just after the first joint patent at issue in the Complaint from sdPhotonics and UCF shown in **Exhibit 10** issued on July 24, 2018.

118.    In October, 2018, the Director of the UCF Incubator who was responsible for leasing from the UCF Photonics Incubator overseen by Dean Saleh contacted the Plaintiff by phone.

119.    In the October, 2018 phone call the Director of the UCF Incubator informed the Plaintiff that the reason Plaintiff's company was being demanded to move was that the Plaintiff had angered Dean Saleh.

120.    The Director of the UCF Incubator then informed the Plaintiff in the call that because sdPhotonics had leased space from the incubator for many years and had so much advanced crystal growth equipment to be moved, he had been able to get UCF to agree to give the Plaintiff's company 18 months to move from its UCF Photonics Incubator space.

121.    This agreement for 18 months would be six months beyond the new lease the UCF Incubator Director had signed in August, 2018, and allow sdPhotonics until about December 2019 to complete the move of its crystal growth equipment from the UCF Photonics Incubator.

122.    Following the October, 2018 phone call, the Plaintiff began making arrangements to obtain alternative space in which to move sdPhotonics that would

have the necessary facilities to continue the research and development into the oxide-free VCSEL inventions.

123.    In November, 2018, the Plaintiff also contacted Florida state officials to inform them that UCF was retaliating against the Plaintiff and his company, and that Plaintiff was concerned about damages to his company.

124.    In December, 2018, Ms. Sovinski took up the actions against sdPhotonics that had been started by the UCF Dean Saleh.

125.    By January, 2019 Ms. Sovinski had begun her own attempts to immediately evict sdPhotonics from the space it had leased in the UCF Photonics Incubator.

126.    In January, 2019, Ms. Sovinski informed the Plaintiff that she was taking her actions to immediately evict sdPhotonics because Plaintiff had reported the UCF retaliation to Florida state officials.

127.    In January, 2019 and February, 2019, Ms. Sovinski demanded Plaintiff resign from any future UCF employment.

128.    sdPhotonics was forced to hire legal counsel to fight the lease eviction based on the fact that Ms. Sovinski's and UCF's actions were retaliatory.

129.    At the end of the lease period at the end of June, 2019, the Plaintiff had moved sdPhotonics and its operations to Richardson, TX, where the company had already begun establishing a material supply chain for the new oxide-free VCSEL invention using III-V foundry production.

130.   Ms. Sovinski and Ms. Shtrom continued the retaliation against the Plaintiff, preparing their new ownership assertions to the USPTO shown in **Exhibits 12** and **14** based on false statements, carrying out their civil conspiracy to commit perjury with the USPTO on the patent applications and patents at issue in this Complaint.

## C.   Ms. Sovinski and Ms. Shtrom coordinate with the military to do long-term damage to the Plaintiff's company's business operations, Plaintiff's company's valuation, and Plaintiff's employment position with sdPhotonics.

131.   The filings by Ms. Sovinski and Ms. Shtrom shown in **Exhibit 12** and **Exhibit 14** by themselves did not cause great damage to the Plaintiff's company's patent applications and patents at issue in this Complaint.

132.   The only guarantee the USPTO makes about the truthfulness of ownership rights asserted in the patent assignment documents filed with its office, is that the USPTO requires the assertions of ownership rights shown in **Exhibit 12** and **Exhibit 14** to be filed under the penalty of perjury with the U.S. federal government.

133.   The USPTO furthermore provides for the means to make corrections to erroneous assignments of ownership in its patent application and patent assignment records.

134.   Therefore, UCF possessed the means to make simple and accurate corrections with the USPTO to the documents filed by Ms. Sovinski and Ms. Shtrom shown in **Exhibit 12** and **Exhibit 14**.

135.   In and about early September, 2019, the Plaintiff contacted UCF and Ms. Sovinski through attorneys after finding Ms. Sovinski's USPTO filings including the one shown in **Exhibit 12**.

136.   The Plaintiff informed UCF and Ms. Sovinski at that time that Ms. Sovinski had made false statements in her USPTO filings shown in **Exhibit 12** and others like it on additional patents filed jointly owned by sdPhotonics and the University of Central Florida Research Foundation.

137.   In response, UCF and Ms. Sovinski did not deny that the filing made by Ms. Sovinski shown in **Exhibit 12** contains false statements.

138.   Instead, in November, 2019, Ms. Sovinski and her UCF supervisor, Ms. Cook, informed the Plaintiff that UCF wished to resolve the matter of Ms. Sovinski's USPTO filing shown in **Exhibit 12** along with others made by Ms. Sovinski on the patent applications and patents at issue in this Complaint.

139.   In this time period the Plaintiff also informed military program monitors about the filings made with the USPTO shown in **Exhibit 12** that Ms. Sovinski had made on patent applications and patents with sdPhotonics covering the oxide-free VCSEL inventions.

140.   In November, 2019, Ms. Sovinski and Ms. Cook proposed that UCF discussed the matter and had decided to "walk away" from the intellectual property matter involving the oxide-free VCSEL invention.

141.   To do so, Ms. Sovinski and Ms. Cook proposed to formally assign any remaining UCF or University of Central Florida Research Foundation ownership

rights to sdPhotonics to continue with its government contracts and development of the new laser invention.

142.   By December, 2019 the Plaintiff had informed the military program monitors working with sdPhotonics on development contracts that UCF had agreed to resolve the issue by relinquishing their and the University of Central Florida Research Foundation ownership rights in the patents and patent applications covering the oxide-free VCSEL invention.

143.   The military program monitors working with sdPhotonics then took actions to accelerate the development of commercial products for the oxide-free VCSEL, which would greatly increase the value of sdPhotonics and its oxide-free VCSEL technology.

144.   Meetings were set up for March 2020 by the military in Washington, D.C. with elected officials shown in **Exhibit 15**. The meetings were for additional government funding to sdPhotonics to provide improved performance over the oxide VCSELs needed by the military to increase the speed of the military optical interconnects used in jet fighters and other military platforms.

145.   However, by the start of April, 2020, Ms. Sovinski and Ms. Cook had still not provided the new assignment documents needed to correct Ms. Sovinski's USPTO filings.

146.   Instead, as shown in **Exhibit 16** with a new USPTO filing dated April 7, 2020, Ms. Sovinski and Ms. Shtrom began once again filing ownership assertions with the USPTO on the jointly owned patents with sdPhotonics.

147.    In her new USPTO filing shown in the **Exhibit 16** with filing dated April 7, 2020, again filed under the penalty of perjury, Ms. Sovinski admits she made false statements in the earlier USPTO filing dated August 21, 2019 shown in **Exhibit 12**.

148.    In her April 7, 2020 filing with the USPTO shown in **Exhibit 16**, Ms. Sovinski attempts to correct false statements she made in her August 21, 2019 filing shown in **Exhibit 12** by crossing out the statements that are false and initializing them.

149.    Ms. Sovinski attempted to correct the statements shown crossed out in **Exhibit 16** after the Plaintiff informed UCF that those specific statements are proven false by earlier patent documents Ms. Shtrom's UCF OTT had recorded with the USPTO.

150.    Ms. Sovsinksi leaves the additional false and misrepresentative statements shown underlined in **Exhibit 13** as uncorrected in her new USPTO filing shown in **Exhibit 16** dated April 7, 2020.

151.    After Ms. Sovinski filed her new declarations with the USPTO dated April 7, 2020 shown in **Exhibit 16**, Ms. Cook and Ms. Sovinski refused to provide the documents to either correct the USPTO assignment records, or relinquish their ownership rights in the patents and patent applications at issue in this Complaint as they had earlier proposed.

152.    In May, 2020, UCF instead presented the Plaintiff an agreement that upon review was found to be fraudulent and could be used to transfer the patent ownership rights to UCF.

153.    The Plaintiff refused the agreement.

154.    In June, 2020, the military claimed to Plaintiff they knew UCF was involved in fraud with the patents and patent applications, and then took additional actions to place the Plaintiff under surveillance by a federal government agency.

155.    By October, 2020, the Plaintiff was delivered a newly revised draft agreement that had been prepared by UCF and also included the military.

156.    Upon review, the Plaintiff found that the agreement appeared fraudulent, and designed to transfer ownership of the Plaintiff's company's intellectual property to UCF.

157.    In November, 2020, the Plaintiff was threatened in a phone call with a demand to sign the agreement that had been presented by UCF, or face an "or else."

158.    In November, 2020, the Plaintiff was stalked using physical endangerments after refusing to sign the agreement prepared by UCF that included the military.

159.    In November, 2020, military program monitors admitted to the Plaintiff that the military was the source of the stalking and could be part of the intellectual property theft, and blamed then President Trump for the actions.

160.    In November, 2020, the military program monitors made further threats and admitted to the Plaintiff that they personally expected to financially benefit from the take-over of the oxide-free VCSEL inventions being developed by sdPhotonics. They further threatened the Plaintiff that he could do little at that time to stop it, and that Plaintiff "did not understand how the military does business."

161.    By January, 2021, the Plaintiff began working to complete the contract work that sdPhotonics had on-going with the military related to the oxide-free VCSEL invention.

162.    During this time Ms. Sovinski and Ms. Shtrom continued to file retroactive ownership documents on additional sdPhotonics patents and patent applications.

163.    **Exhibit 17** shows one of the continued USPTO filings, this time dated April 2, 2021, Ms. Sovinski and Ms. Shtrom made or had made on sdPhotonics patents.

164.    The result of the continued filings by Ms. Sovinski and Ms. Shtrom on the jointly owned patent applications and patents with sdPhotonics and UCF and sdPhotonics' separate patents was to increase the damage to the value of the patents to sdPhotonics so greatly that the Plaintiff's company could no longer continue its business operations, and to seize control of the ownership of the intellectual property of the Plaintiff's company.

165.    In September, 2021, the military again joined in and made threats, used stalking, and made attempts to extort additional intellectual property from sdPhotonics related to the oxide-free VCSEL and oxide VCSEL inventions.

166.    The military this time worked with the University of Illinois reported in **Exhibit 1** to obtain the actual prototypes from sdPhotonics of its VCSEL inventions as part of its intellectual property theft schemes and military corruption involving U.S. and state elected officials.

167.    Then, in October, 2021, the Plaintiff learned he had been targeted with identity theft and tax fraud in a 2017 tax year and tax return. The identity theft and tax fraud were later linked to The University of Texas at Austin, and another military contract involving the oxide-free VCSEL invention reported in **Exhibit 1**.

168.    The filings by Ms. Sovinski and Ms. Shtrom continued into February, 2022, as shown in **Exhibit 18** dated February 21, 2022, as Ms. Sovinski and Ms. Shtrom sought to damage each and every patent that sdPhotonics or the Plaintiff may use to further the work on the oxide-free VCSEL invention.

169.    The UCF regulations require the university to engage in revenue sharing with inventors, with the rates of the revenue sharing set by UCF policy.[3]

170.    Plaintiff once again contacted Ms. Cook, Ms. Sovinski, and UCF in October, 2022, with records showing that the USPTO filings shown in **Exhibits 12, 14, 16, 17,** and **18** are erroneous and contain false statements for patents at issue in this Complaint.

---

[3] https://www.research.ucf.edu/documents/PDF/2020/UCFRF_RevenueDistributionGuideline_effective2017.pdf

171.    In apparent response to the Plaintiff's contact to UCF in October, 2022 regarding the Plaintiff's oxide-free VCSEL inventions and the patents that cover it, and reporting of the military actions and involvement by high-ranking elected officials, the Plaintiff became stalked so heavily with physical endangerments so intense that at the end of December, 2022, he was forced to leave the U.S. for his personal safety. The Plaintiff filed inspector general complaints and reports to U.S. congressional officials of the stalking and endangerments from Europe, before it became sufficiently safe to return to the U.S. in late February, 2023.

172.    The Defendants' actions related to their USPTO filings described in this Complaint have, to the Plaintiff's knowledge and at the time of this Complaint, caused any further work to develop commercial products based on the oxide-free VCSEL inventions, and all work by Plaintiff's company, to halt.

173.    The actions by Ms. Sovinski and Ms. Shtrom in filing their retroactive false ownership documents with the USPTO, along with additional actions by the universities and military program monitors reported in **Exhibit 1**, have caused sdPhotonics to terminate its employees, halt its business operations, and has prevented the Plaintiff and the Plaintiff's company from continuing in development and commercialization of the company's new oxide and oxide-free VCSEL inventions and products that are covered by the patents at issue in this Complaint.

## **FIRST CAUSE OF ACTION**

**Title 42 U.S.C. §1983; 1st U.S. Constitutional Amendment.
Plaintiff engaged in constitutionally protected speech reporting
scientific findings to which Defendants retaliated.
Defendants Sovinski, Shtrom**

174.   Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

175.   A citizen has the right to be free from governmental action taken to retaliate against the citizen's exercise of protected speech, or to deter the citizen from exercising those rights in the future, under the 1st U.S. Constitutional Amendment.

176.   To establish 42 U.S.C. § 1983 claim that the Defendants deprived Plaintiff of his Constitutionally protected 1st Amendment rights the Plaintiff must show: (1) the Plaintiff was engaged in constitutionally protected speech; (2) the Defendants' actions against Plaintiff were retaliatory; (3) the Plaintiff's activity was a substantial or motivating factor in the Defendants' conduct; (4) that the Defendants retaliation would likely deter a similarly situated reasonable person from engaging in similar activity; and (5) Defendants' acted under color of state.

177.   The Plaintiff angered the military and universities the military was funding, and the UCF Dean Dr. Saleh by presenting and publishing articles and scientific findings that contradicted claims the military and university professors were making who the military had funded.

178.   However, the 1st U.S. Constitutional Amendment protects the Plaintiff's right to present and publish those scientific findings.

179.   The Plaintiff's scientific findings concerning the DARPA proposed technologies of the metal cavity lasers and silicon photonics have also become largely accepted as correct by the scientific community.

180.   Ms. Sovinski and Ms. Shtrom used their employment positions with UCF to join in the retaliation by the military and Dean Saleh, and repeatedly file false ownership documents on the patents and patent applications covering the Plaintiff's oxide-free VCSEL invention at issue in this Complaint.

181.   Ms. Sovinski took her own actions following Dean Saleh's initial actions in September, 2018 using the Plaintiff's company to retaliate by forcing an immediate move from the company's leased space with the UCF Incubator to damage the company's ability to continue to develop the laser invention.

182.   In January and February, 2019, Ms. Sovinski continued Dean Saleh's actions attempting an immediate eviction of the Plaintiff's company from the space is leased from the UCF Photonics Incubator to disrupt the Plaintiff's company's operations.

183.   Ms. Sovinksi and Ms. Shtrom relied on the authority of their UCF positions to repeatedly file the false ownership documents shown in **Exhibit 12** and **Exhibit 14**, and repeatedly engage in civil conspiracy in commission of perjury with the USPTO.

184.   Ms. Sovinski and Ms. Shtrom entered into their civil conspiracy as well to violate UCF-2.029 in **Exhibit 3**, the separate 2014 UCF IP Agreement shown in **Exhibit 4**, and the UCF Collective Bargaining Agreement in **Exhibit 5**.

185.   Ms. Sovinski and Ms. Shtrom continued the retaliation filing their false USPTO ownership documents shown in **Exhibits 16**, **17**, and **18**, continuing at least into February, 2022, to damage and all potential benefits the Plaintiff's may have otherwise derived from his oxide-free VCSEL inventions from his patents and patent applications.

186.   Ms. Sovinski and Ms. Shtrom took their actions engaging in perjury with the USPTO to damage the ownership rights of the Plaintiff's company, reducing the Plaintiff's company's value, and damage Plaintiff's company abilities to conduct its business operations that were based on the Plaintiff's inventions.

187.   Ms. Sovinski and UCF admitted Ms. Sovinski had included false statements in **Exhibit 12** to the USPTO as part of her new assertions in **Exhibit 16** dated April 7, 2020.

188.   Ms. Sovinski and Ms. Shtrom made their filings with the USPTO also after admitting eight months prior to their USPTO filings shown in **Exhibit 12** and **Exhibit 14**, that sdPhotonics had co-ownership on the patent applications and patents, and that sdPhotonics had been splitting patent costs and paying for all development costs of the oxide-free VCSEL inventions.

189.   Ms. Sovinski states in her December 11, 2018 email to Ms. Shtrom shown in **Exhibit 11**:

"...Deppe is the only inventor, but **it still shows co-ownership with his company**, and I don't see any agreement as to why. I see the **courting license**, and I recall (and saw) that **the company has been splitting patent costs**, but it looks like maybe they are late now?"

190.   The Plaintiff once again contacted Ms. Cook and UCF in October, 2022, with records showing that the USPTO filings shown in **Exhibits 12, 14, 16, 17,** and **18** are erroneous and contain false statements.

191.   In apparent response to the Plaintiff's contact to UCF in October, 2022 and other reporting of the military actions, the Plaintiff was stalked so heavily with physical endangerments so intense that he was forced to leave the U.S. To date, UCF has made no attempt to discuss Plaintiff's patents as also required by UCF Regulations UCF-2.029, or provide information related to revenue sharing on income that may have been earned on the patents.

192.   As a direct and proximate consequence of these unlawful actions by Defendants taken under color of the state in violation of Title 42 U.S.C. §1983 with the intent to retaliate against Plaintiff in coordination with the military and other universities, and in violation of the 1st Amendment of the U.S. Constitution, Plaintiff has suffered damages to his property, loss of future income and salary, and loss of income revenue sharing from UCF that may have been earned or otherwise earned from Plaintiff's inventions had it not been for the actions of Ms. Sovinski and Ms. Shtrom's with the USPTO.

193.   Plaintiff is entitled to attorneys' fees, damages due to intentional infliction of emotional distress caused by their outrageous actions, and is entitled to compensatory and punitive damages for their malicious intentions in carrying out the civil rights violations of the 1st U.S. Constitutional Amendment.

**SECOND CAUSE OF ACTION**

**Title 42 U.S.C. §1983; 1st U.S. Constitutional Amendment.
Plaintiff engaged in constitutionally protected activity reporting
UCF retaliation to which Defendants retaliated.
Defendants Sovinski, Shtrom**

194.    Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

195.    A citizen has the right to be free from governmental action taken to retaliate against the citizen's exercise of activity protected by the 1st U.S. Constitutional Amendment, or to deter the citizen from exercising those rights in the future.

196.    To establish 42 U.S.C. § 1983 claim that the Defendants deprived Plaintiff of his Constitutionally protected 1st Amendment rights the Plaintiff must show: (1) the Plaintiff was engaged in a constitutionally protected speech; (2) the Defendants' actions against Plaintiff were retaliatory; (3) the Plaintiff's activity was a substantial or motivating factor in the Defendants' conduct; (4) that the Defendants retaliation would likely deter a similarly situated reasonable person from engaging in similar activity; and (5) Defendants' acted under color of law.

197.    The Plaintiff engaged in activity protected by the 1st U.S. Constitutional Amendment when, in December 2018, he reported to Florida state officials that he and his company, sdPhotonics, were being retaliated against by UCF administrator Bahaa Saleh and other UCF administrators.

198.    In her Feb. 2019 letter to the Plaintiff, the Defendant Sovinski used her UCF position to demand the Plaintiff's resignation and informed Plaintiff that

while UCF had originally given him 18 months to exit his company from the UCF Photonics Incubator and resign his position with UCF, the Plaintiff had "taken a different path."

199.   Ms. Sovinski thus cited directly to Plaintiff's protected activity in which he reported the retaliation to the higher state officials in December, 2018 that he had "taken a different path" as her reason for taking more extreme actions in January and February 2019, demanding Plaintiff's resignation from UCF and attempting to immediately evict Plaintiff's company, sdPhotonics, from its leased space with UCF.

200.   Ms. Sovinski and Ms. Shtrom then prepared false documents shown in **Exhibit 12**, **Exhibit 14**, **Exhibit 16**, **Exhibit 17** and **Exhibit 18** that they signed and filed with the USPTO under the penalty of perjury, that falsely disparaged the Plaintiff and misrepresented UCF Regulations UCF-2.029 shown in **Exhibit 3** and the 2014 UCF IP Agreement shown in **Exhibit 4**.

201.   Ms. Sovinski and Ms. Shtrom used their employment positions with UCF to continue to make or have made the false filings with the USPTO on sdPhotonics patents for approximately two and one-half years through February, 2022 as shown in **Exhibit 18**, damaging the value of the patents for both UCF and sdPhotonics, preventing sdPhotonics from continuing its business development based on the oxide-free VCSEL invention, and damaging the company value of sdPhotonics.

202.   When the Plaintiff again contacted Ms. Cook and UCF in October, 2022, with records showing that the USPTO filings shown in **Exhibits 12, 14, 16, 17,** and **18** are erroneous and contain false statements, in apparent response the Plaintiff became stalked so heavily with physical endangerments so intense that he was forced to leave the U.S.

203.   As a direct and proximate consequence of these unlawful and retaliatory actions by Defendants taken under color of the state in violation of Title 42 U.S.C. §1983, with Ms. Sovinski's stated intent to retaliate against the Plaintiff for his reporting UCF misconduct to state officials, and the 1st Amendment of the U.S. Constitution, Plaintiff has suffered damages to his property and value to his company, loss of future income and salary, loss of income sharing through UCF that may have been earned or otherwise earned for Plaintiff's inventions had it not been for the actions of Ms. Sovinski and Ms. Shtrom's with the USPTO.

204.   Plaintiff is also entitled to attorneys' fees, damages due to intentional infliction of emotional distress caused by their outrageous actions, and is entitled to compensatory and punitive damages for their malicious intentions in carrying out the civil rights violations of the 1st U.S. Constitutional Amendment.

### THIRD CAUSE OF ACTION
**Title 42 U.S.C. §1983: 14th U.S. Constitutional Amendment.
Violation of Plaintiff's right to procedural due process as a result of
USPTO filings by Defendants making false claims of improper actions
by Plaintiff related to his UCF employment and patent applications.
Defendants Sovinski, Shtrom**

205.   Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

206.   The due process clause of the 14th Amendment of the U.S. Constitution prohibits states from depriving any person of life, liberty, or property without procedural due process of law.

207.   To establish a 42 U.S.C. § 1983 claim that the Defendants deprived Plaintiff of his Constitutionally protected 14th Amendment rights the Plaintiff must show: (1) the Plaintiff was damaged by Defendants' actions acting under the color of the state; (2) the Defendants took their actions to damage the Plaintiff improperly and without procedural due process; and (3) Defendants' acted under color of law.

208.   The Defendants Sovinski and Shtrom have used their employment positions and acted clothed under the authority of UCF as a state institution to take their actions with the USPTO.

209.   The Defendants Sovinski and Shtrom do not point to any investigation by UCF that led to their filings with the USPTO on the joint patent applications jointly owned by sdPhotonics and the University of Central Florida Research Foundation.

210.   Ms. Sovinski states in her August 21, 2019 filing with the USPTO shown in **Exhibit 12** that Dr. Deppe:

> "improperly designated his company, sdPhotonics, LLC, as co-applicant. UCF's prosecution counsel carried on the co-applicant designation during the non-provisional phase."

211.    Ms. Sovinski points to no investigation upon which she bases her statements in **Exhibit 12**.

212.    Ms. Sovinski makes statements in her USPTO filing to justify her actions in filing shown in **Exhibit 12** that even Ms. Sovinski later admits are not true, as shown in her April, 2020 USPTO filing in **Exhibit 16**.

213.    In fact, Ms. Sovinski had already admitted to Ms. Shtrom in her December 11, 2018 email that she knew the Plaintiff's company had co-ownership of the patents, and had been splitting the costs for the patents.

214.    The email shown in **Exhibit 11** that Ms. Sovinski sent to Ms. Shtrom on December 11, 2018, has underlines added in red of the sentences in which Ms. Sovinski admits the patent ownership, and that she knows sdPhotonics has been splitting patent costs:

> "...Deppe is the only inventor, but **it still shows co-ownership with his company**, and I don't see any agreement as to why. I see the **courting license**, and I recall (and saw) that **the company has been splitting patent costs**, but it looks like maybe they are late now?"

215.    Any objective investigation by UCF would have found that Defendants Sovinski and Shtrom were violating UCF-2.029 and the 2014 UCF IP Agreement in filing their retroactive ownership documents attempting to assert any ownership rights with the USPTO in the patents and patent applications covering the Plaintiff's oxide-free VCSEL inventions, after sdPhotonics had split patent costs and paid development costs for the oxide-free VCSEL invention.

216.   Ms. Sovinski and Ms. Shtrom relied on the authority of their UCF employment positions to take their actions under the color of the state and make the false claim under the penalty of perjury with the USPTO that Plaintiff had:

"improperly designated his company, sdPhotonics, LLC, as co-applicant. UCF's prosecution counsel carried on the co-applicant designation during the non-provisional phase."

217.   Ms. Sovinski and Ms. Shtrom knew that UCF had performed no investigations or conducted due process to support the above claim made in **Exhibit 12.**

218.   Ms. Sovinski and Ms. Shtrom knew that that their filings with the USPTO shown in **Exhibit 12** were in violation of UCF Regulations UCF-2.029, as evidenced by Ms. Sovinski's December 11, 2018 email to Ms. Shtrom shown in **Exhibit 11.**

219.   As a direct and proximate consequence of these unlawful actions by Defendants taken under color of the state in violation of Title 42 U.S.C. §1983 and the 14th Amendment of the U.S. Constitution, Plaintiff has suffered damages to his property, damages to his professional reputation, loss of future income and salary, loss of value in his company, and loss of income sharing with UCF from his inventions that were earned or would have otherwise been earned had it not been for the actions of Ms. Sovinski and Ms. Shtrom's with the USPTO.

220.   The Plaintiff is also entitled to attorneys' fees, damages due to intentional infliction of emotional distress caused by their outrageous actions, and

is entitled to compensatory and punitive damages for their malicious intentions in carrying out the civil rights violations of the 14th U.S. Constitutional Amendment.

### FOURTH CAUSE OF ACTION
### Title 42 U.S.C. §1983: 14th U.S. Constitutional Amendment.
### Deprivation of property without due process.
### Defendants Sovinski, Shtrom

221. Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

222. The Defendants have used their employment positions with UCF and the state of Florida to take actions that have deprived Plaintiff of his property, both in the value of his company sdPhotonics, and in the free use and enjoyment of the company's intellectual property, in violation of Plaintiff's constitutional rights under the 14th U.S. Constitutional Amendment.

223. To establish the 42 U.S.C. § 1983 claim that the Defendants deprived Plaintiff of his Constitutionally protected 14th Amendment rights, the Plaintiff must show: (1) the Plaintiff was deprived of property by Defendants' actions; (2) the Defendants took their actions that deprived Plaintiff of property without procedural due process; and (3) Defendants' acted under color of law.

224. Ms. Sovinski and Ms. Shtrom prepared and retroactively filed the ownership documents with the USPTO that used UCF's status of a state entity to claim that sdPhotonics could not have ownership rights in the patents and patent applications at issue in this Complaint.

225.    However, the documents that Ms. Sovinski and Ms. Shtrom filed with the USPTO are false, and deprive the Plaintiff and the Plaintiff's company from the free and fair use of the patents and patent applications.

226.    Ms. Sovinski and Ms. Shtrom use their employment positions with UCF to claim the authorities to make their filings with the USPTO.

227.    Ms. Sovinski and Ms. Shtrom simply filed their retroactive ownership documents shown in **Exhibit 12**, **Exhibit 14**, **Exhibit 16**, **Exhibit 17** and **Exhibit 18** asserting that Plaintiff's company had no ownership, depriving the Plaintiff of the value in his company he owned that should have come with the development and patenting of the oxide-free VCSEL invention.

228.    Ms. Sovinski and Ms. Shtrom knowingly violated UCF-2.029 and committed perjury in their filings with the USPTO shown in **Exhibit 12**, **Exhibit 14**, **Exhibit 16**, **Exhibit 17** and **Exhibit 18**.

229.    Ms. Sovinski and Ms. Shtrom deprived the Plaintiff of the value in his company due to the company's ownership in the patents and patent applications at issue in this Complaint that cover the Plaintiff's oxide-free VCSEL invention.

230.    When the Plaintiff again contacted Ms. Cook and UCF in October, 2022, with records showing that the USPTO filings shown in **Exhibits 12, 14, 16, 17, and 18** are erroneous and contain false statements, he became stalked so heavily with physical endangerments so intense that he was forced to leave the U.S.

231.    UCF is required to engage in revenue distribution that it receives for inventions to the inventors. The revenue distribution terms are given in

https://www.research.ucf.edu/documents/PDF/2020/UCFRF_RevenueDistribu
tionGuideline_effective2017.pdf.[4]

232.    The revenue distribution following the standard policy in place at UCF includes 50% of the Cumulative Net Income resulting from the inventions to be distributed to the inventor when the income to UCF is $1 to $100K, 40% for income of $101K to $200K, and 30% of the Cumulative Net Income to the inventor for income greater than $200K.

233.    As a direct and proximate consequence of these unlawful actions by Defendants taken under color of the state in violation of Title 42 U.S.C. §1983 and the 14th Amendment of the U.S. Constitution, Plaintiff has suffered damages to his property, damages to his professional reputation, loss of future income and salary, loss of value in his company, and loss of income sharing with UCF from his inventions that were earned or would have otherwise been earned had it not been for the actions of Ms. Sovinski and Ms. Shtrom's with the USPTO.

234.    The Plaintiff is also entitled to attorneys' fees, damages due to intentional infliction of emotional distress caused by their outrageous actions, and is entitled to compensatory and punitive damages for their malicious intentions in carrying out the civil rights violations of the 14th U.S. Constitutional Amendment.

**FIFTH CAUSE OF ACTION**
**Title 42 U.S.C. §1983: 5th U.S. Constitutional Amendment.**
**Deprivation of property using criminal conspiracy with federal entities to commit perjury with the USPTO.**
**Defendants Sovinski, Shtrom**

---

[4] https://www.research.ucf.edu/documents/PDF/2020/UCFRF_RevenueDistributionGuideline_effective2017.pdf

235. Plaintiff realleges and incorporates by references all preceding paragraphs of this Complaint at though fully set forth herein.

236. To establish the 42 U.S.C. § 1983 claim that the Defendants deprived Plaintiff of his Constitutionally protected 5th Amendment rights, the Plaintiff must show: (1) the Plaintiff was deprived of property by Defendants' actions in a conspiracy with the U.S. military to deprive the Plaintiff of his company value, including its intellectual property, trade secrets and prototypes of its VCSEL inventions without due process or compensation; (2) the Defendants took their actions that deprived Plaintiff of property without procedural due process; and (3) Defendants' acted under color of state law.

237. The Defendants coordinated their actions with the U.S. military, who sought to retaliate against the Plaintiff because of his criticisms of their military projects. This retaliation grew into an intellectual property theft scheme by the military working with the three universities and additional government entities.

238. The U.S. military was taking over the intellectual property of sdPhotonics using military contracts along with the university actions in various fraud schemes and had apparently sold the oxide-free VCSEL invention as part of a large government bribery scheme with U.S. elected officials.

239. In November, 2020, UCF and the military attempted to extort the Plaintiff's signing of a fraudulent agreement prepared with UCF and the military that was designed as a cover-up for Ms. Sovinski's and Ms. Shtrom's false USPTO

filings in which they are alleged to have committed perjury, with physical stalking and physical endangerments.

240.   The purpose at the time, as some of the military program monitors informed the Plaintiff in November, 2020 in sorted taunts as part stalking, was to improve their future financial situation using his inventions.

241.   Ms. Sovinski and Ms. Shtrom's took their actions of alleged perjury the USPTO in a civil conspiracy with the military who also used SBIR contracts they had issued to sdPhotonics for the oxide-free VCSEL invention, to take over the sdPhotonics' technology, intellectual property, business plans and materials supply chains that had been put in place by the Plaintiff and his company.

242.   Ms. Sovinski and Ms. Shtrom took their actions of their admitted perjury with the USPTO to obtain exclusive use of the patents and patent applications at issue in this Complaint for their own UCF use and for military use, and as part of a much larger bribery scheme involving high ranking U.S. elected and appointed federal officials.

243.   As a direct and proximate consequence of these unlawful actions by Defendants taken under color of the state in violation of Title 42 U.S.C. §1983 and the 5th Amendment of the U.S. Constitution, Plaintiff has suffered damages to his property, damages to his professional reputation, loss of future income and salary, loss of value in his company, and loss of income sharing with UCF from his inventions that were earned or would have otherwise been earned had it not been for the actions of Ms. Sovinski and Ms. Shtrom's with the USPTO.

244.   The Plaintiff is also entitled to attorneys' fees, and damages due to intentional infliction of emotional distress due to the outrageous actions, and is entitled to compensatory and punitive damages for their malicious intentions in carrying out the civil conspiracy to commit civil rights violations with the U.S. military of the 5th U.S. Constitutional Amendment.

### SIXTH CAUSE OF ACTION
### Civil conspiracy to commit perjury with the USPTO on sdPhotonics' patent applications and patents to damage the valuation of Plaintiff's company.
### Defendants Sovinski, Shtrom

245.   Plaintiff realleges and incorporates by references all preceding paragraphs of this Complaint at though fully set forth herein.

246.   A civil conspiracy in Florida involves the following elements: (1) a conspiracy between two or more parties; (2) to do an unlawful act or to a lawful act by unlawful means; (3) the doing of some overt act in pursuance of the conspiracy; and (4) damage to Plaintiff as a result of the acts performed pursuant to the conspiracy.

247.   The Defendants Ms. Sovinski and Ms. Shtrom conspired to commit perjury with the USPTO, involving certain patents and patent applications owned by the company, sdPhotonics, owned by the Plaintiff.

248.   **Exhibit 11** shows the email obtained from public records requests that was sent on December 11, 2022 by Ms. Sovinski to Ms. Shtrom, eight months prior to when Ms. Sovinski and Ms. Shtrom first began filing the false ownership

documents with the USPTO shown in **Exhibit 12** and **Exhibit 14** on sdPhotonics'

patents and patent applications, in which Ms. Sovinski states to Ms. Shtrom:

"...Deppe is the only inventor, but **it still shows co-ownership with his company**, and I don't see any agreement as to why. I see the **courting license**, and I recall (and saw) that **the company has been splitting patent costs**, but it looks like maybe they are late now?"

249.    Ms. Sovinski and Ms. Shtrom knew already prior to filing their USPTO

documents shown in **Exhibit 12** and **14** that doing so would violate UCF-2.029 in

**Exhibit 3** and the 2014 UCF IP Agreement in **Exhibit 4**, and result in perjury

with the USPTO.

250.    The Defendants were so emboldened by their conspiracy that included

the U.S. military, additional universites and government entities, that they

admitted their own perjury in the USPTO records in **Exhibit 16** after the Plaintiff

identified these false statements to Ms. Sovinski and UCF in November, 2019.

251.    Ms. Sovinski and Ms. Shtrom relied on the authority of their UCF

employment positions to take their actions clothed under the authority of the state

and make the false claims under the penalty of perjury with the USPTO including

in **Exhibit 12** that Plaintiff had:

"improperly designated his company, sdPhotonics, LLC, as co-applicant. UCF's prosecution counsel carried on the co-applicant designation during the non-provisional phase."

252.    Ms. Sovinski admitted in her April 7, 2020 USPTSO filing shown in

**Exhibit 16** that the statement above was false, as she was forced to because that

statement was shown to contradict the USPTO prior records for the patent applications on the oxide-free VCSELs at issue in this Complaint.

253.   Knowing that sdPhotonics had split patent costs, and had paid for development costs, and had joint ownership in the patents and patent applications at issue in this Complaint as shown in **Exhibit 11**, Ms. Sovinski and Ms. Shtrom simply omitted any mention of these facts in their USPTO filings shown in **Exhibit 12**, **Exhibit 14**, **Exhibit 16**, **Exhibit 17** and **Exhibit 18**.

254.   The Defendants Sovinski and Shtrom have engaged in civil conspiracy to commit perjury with the USPTO, and did so in a repeated fashion over a time period as shown by **Exhibit 12, Exhibit 14, Exhibit 16, Exhibit 17** and **Exhibit 18**, beginning from the mid-Summer, 2019 and continuing at least through February, 2022.

255.   As a result of Ms. Sovinski's and Ms. Shtrom's alleged engagement in civil conspiracy to commit perjury with the USPTO, the Plaintiff's value in his company and his professional reputation has been greatly damaged and diminished.

256.   As a direct and proximate consequence of these unlawful actions by Defendants Sovinski and Shtrom in violation of Florida law against civil conspiracy, Plaintiff has suffered damages to his personal property, loss of future income and salary, is entitled to damages due to intentional infliction of emotional distress due to the Defendants' outrageous actions, and is entitled to compensatory and punitive damages for their malicious intentions.

## SEVENTH CAUSE OF ACTION
### Tortious interference of the Plaintiff's employment relationship with sdPhotonics. Defendants Sovinski, Shtrom

257.  Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

258.  To prove tortious interference with the employment relationship the Plaintiff must show: (1) the existence of the employment relationship; (2) the Defendants had knowledge of the employment relationship; (3) the Defendants intentionally and unjustifiably interfered with that employment relationship; and (4) the Plaintiff suffered damages as a result of the Defendants' interference.

259.  The Defendants knew that the Plaintiff had worked fully employed by sdPhotonics from January, 2015 into August, 2018, and intended to return to work for sdPhotonics as he was being forced under the threat of further retaliation to resign from UCF.

260.  Ms. Sovinski understood that sdPhotonics needed its leased space in UCF to perform work on its research contracts, and yet took actions attempting to evict the company from its leased space knowing this would damage the company's operations.

261.  When this was not fully successful, Defendants Sovinski and Shtrom subsequently engaged in civil conspiracy to commit perjury with the USPTO, filing the false ownership documents shown in **Exhibit 12** and **Exhibit 14**.

262. Ms. Sovinski and Ms. Shtrom continued to make false filings of ownership documents on the patents and patent applications needed by sdPhotonics to conduct its business operations, from when these were discovered in August, 2019 through February, 2022, as shown in **Exhibit 18**.

263. As a result of their intentional and unjustifiable acts to engage in civil conspiracy to commit the alleged perjury with the USPTO on the patents and patent applications that sdPhotonics jointly owned with UCF, and damages to sdPhotonics business operations, the company can no longer operate and no longer provide the expected employment for the Plaintiff that would have occurred had the Defendants not taken their actions.

264. As a direct and proximate consequence of these unlawful actions by Defendants in violation of Florida law against tortious interference with an employment relationship, Plaintiff is no longer able to engage in his chosen activity of inventing, since the company's patents and patent applications are now damaged by the Defendants' Sovinski's and Shtrom's false filings with the USPTO.

265. As a direct and proximate consequence of these unlawful actions by Defendants in violation of Florida law against tortious interference with an employment relationship, Plaintiff has suffered damages to his past, current, and future employment with his own company, loss of past, current, and future income and salary, is entitled to damages due to intentional infliction of emotional distress due to the Defendants' outrageous actions, and is entitled to compensatory and punitive damages for their malicious intentions.

## EIGHTH CAUSE OF ACTION
### Tortious interference with Plaintiff's business relationship with sdPhotonics.
### Defendants Sovinski, Shtrom

266.    Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

267.    The elements needed to prove a claim of tortious interference with a business relationship are: (1) The Plaintiff had a business relationship with another party; (2) the Defendants knew about the Plaintiff's business relationship with the other party; (3) the Defendants purposely and unjustly disrupted or interfered with the business relationship; and (4) as a direct result of the disruption, damages occurred.

268.    Both Ms. Sovinski and Ms. Shtrom knew that the Plaintiff had a business relationship with sdPhotonics, and was also the owner of the company, as shown in Exhibit 11.

269.    Ms. Sovinski states in her email shown in **Exhibit 11** that she knows Plaintiff's company has co-ownership in the patent applications and patents.

270.    The Defendants further knew that sdPhotonics' intellectual property was a critical asset of the company, based on the Plaintiff's inventions.

271.    The Defendants purposefully and unjustly took their actions to file the false ownership documents with the USPTO shown in **Exhibit 12** and **Exhibit 14** to damage the business relationship that Plaintiff had with sdPhotonics, and in fact to damage the business operations and intellectual property of sdPhotonics to

prevent the company from operating and the Plaintiff from realizing the proper value from the company.

272.   After making their initial filings of their false and misrepresentative ownership documents with the USPTO on the joint applications by sdPhotonics and UCF starting in Summer, 2019, they continued to make or have made the false filings on sdPhotonics patents for the next two and one-half years, through February, 2022, damaging sdPhotonics' ability to continue its business operations and the value of the company that depended on its intellectual property.

273.   As a direct and proximate consequence of these unlawful actions by Defendants in violation of Florida law against tortious interference with an employment relationship by engaging in the alleged perjury with the USPTO on the jointly owned patents at issue in this Complaint, the Plaintiff has suffered damages to his business relationship and ability to do business with sdPhotonics, and the company's valuation, and is entitled to damages due to intentional infliction of emotional distress due to the Defendants' outrageous actions, and is entitled to compensatory and punitive damages for their malicious intentions.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff Dennis Deppe respectfully requests a jury trial and that this Court as a result enters judgement against the Defendants, that grants the Plaintiff following relief and compensation for damages:

274. Monetary damages according to Defendants' apportioned legal accountabilities to appropriately compensate for Plaintiff's for damages that total the following amounts:

a. Plaintiff's reduced or lost economic benefit from the value in his ownership of sdPhotonics. sdPhotonics had an annual revenue of ~$1,000,000/yr. at the time Defendants took their actions in filing retroactive false ownership documents with the USPTO that Plaintiff first learned about in mid-July 2019. In this time period Plaintiff was in discussions with potential investors and partners that placed a valuation of approximately $25,000,000. The Plaintiff's damages due to loss of value of his company is approximately $25,000,000.

b. Plaintiff's reduced or loss of economic benefit of salary due to employment with sdPhotonics. The past or imminent damages include $250,000 annual income totaling $225,000 in year 2022, $262,500 for 2023, and future damages of loss of salary including anticipated raises of at least 3% in 2024 and onward for next ten years until 2034. The total anticipated income loss is $3,587,046.

c. Plaintiff's reduced or loss of economic benefit from royalty earnings expected from sdPhotonics' licensing revenue of the oxide-free VCSEL inventions estimated to amount to $50,000 beginning in 2023, $300,000 in 2024, $500,000 in years 2025

through 2037 after that in which sdPhotonics remains unable to return to business operations. Plaintiff's lost royalties from sdPhotonics is estimated to total $6,850,000.

d. Plaintiff's reduced or loss of economic benefit from royalty earnings from UCF licensing revenue earned from the intellectual property of the oxide-free VCSEL inventions. The UCF royalty sharing in 2017 was 50% of royalties earned by the university from $1 to $100K, 40% of royalties earned by the university from $101K to $200K, 30% of royalties earned by the university greater than $200K. The Plaintiffs' lost royalties are estimated to amount to $50,000 for year 2022, $60,000 beginning in 2023, $75,000 in 2024, and $100,000 in 2025, $150,000 in 2025, $200,000 in 2026 and beyond until 2037. Plaintiff's estimated lost royalties from the university total $2,700,000.

275. Intentional infliction of emotional distress due to the Defendants' outrageous filing the alleged false documents with repeated engagement in civil conspiracy and perjury with the UPSTO in a near continuous fashion on Plaintiff's company for approximately two and one-half years until at least February, 2022.

276. Punitive damages for Defendants' intentional tortious actions of damaging Plaintiff's company, damaging Plaintiff's professional standing, intentional infliction of emotional distress, and additional punitive damages as determined by the Jury and the Court to be fair and equitable under the law.

277.  Plaintiff's reasonable attorneys' fees, costs and other costs and disbursements in this action, pursuant to Title 42 U.S.C. §1983.

278.  A statement from the Court attesting to Defendants' improper filing of retroactive ownership documents on Plaintiff's oxide-free VCSEL inventions.

279.  Granting such other and further and additional relief to the Plaintiff as the Jury and Court deems just and proper.

Respectfully submitted this 2nd day of August, 2023.

/s/ Dennis G. Deppe
DENNIS G. DEPPE, PRO SE
5749 Aloma Woods Blvd.
Oviedo, FL 32765
Telephone: (407) 929-1062
E-Mail:  dennisdeppe01@gmail.com