UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DENNIS G. DEPPE,

    Plaintiff,

v.                                                        Case No: 6:23-cv-1484-JSS-UAM

SANDRA M. SOVINSKI and
SVETLANA S. SHTROM,

    Defendants.
_____/

## ORDER

Defendants, Sandra M. Sovinski and Svetlana S. Shtrom, move to dismiss Plaintiff's second amended complaint. (Dkt. 103.) Plaintiff, Dr. Dennis G. Deppe, proceeding pro se, opposes the motion. (Dkt. 109.) Upon consideration, for the reasons outlined below, the motion is granted in part and denied in part.

### BACKGROUND[1]

Plaintiff is a scientist and entrepreneur with decades of experience "in research, . . . patenting inventions, and technology start-ups" who was previously employed as a faculty member at the University of Central Florida (UCF). (Dkt. 96 at 2–5.) One of his inventions, the oxide vertical-cavity surface-emitting laser (VCSEL), has been found to have a myriad of technological applications. (*Id.* at 3.) It

---

[1] The court accepts the well-pleaded factual allegations in the complaint as true and construes them in the light most favorable to Plaintiff. *See Harry v. Marchant*, 291 F.3d 767, 769 (11th Cir. 2002) (en banc).

"is now produced in many countries and in 2021 had a global market of $1.5[ billion]." (*Id.*) While the Defense Advanced Research Projects Agency (DARPA) sought to "replace the oxide VCSEL" with "even smaller laser devices," Plaintiff started his own company, sdPhotonics LLC, through which he "develop[ed] an improved replacement for the . . . oxide VCSEL," the oxide-free VCSEL, which Plaintiff explains is a substantial refinement of his earlier design. (*Id.* at 4.)

To develop the oxide-free VCSEL, Plaintiff leased laboratory space from UCF as part of its "[p]hotonics [i]ncubator." (*Id.* at 5, 22.) During this time, Plaintiff "began presenting and publishing research findings that contradicted . . . large research programs that DARPA had funded with . . . universities and defense industries." (*Id.* at 21.) Dean Bahaa Saleh, a "UCF administrator" who ran the incubator, asked Plaintiff to stop presenting these findings "because it was angering other professors Dean Saleh oversaw at UCF." (*Id.* at 22.) Plaintiff refused, explaining to Dean Saleh that the research he was contradicting "was based on flawed science . . . and that the authors were misrepresenting the science." (*Id.*) Plaintiff's refusal "angered Dean Saleh" and directly prompted Sovinski to "cancel[]" an eighteen-month lease Plaintiff had entered into for lab space in October 2018 and to "tr[y] to evict Plaintiff's company from its leased space" in January 2019. (*Id.* at 24–25, 48.)

Plaintiff claims that while he was working to develop the oxide-free VCSEL, the military and several universities, including UCF, sought "to take over" that technology. (*Id.* at 4–5.) Plaintiff alleges that Defendants were involved in this scheme. At all times relevant to this lawsuit, Sovinski was UCF's Deputy General

- 2 -

Counsel for Research, and Shtrom was UCF's Director of the Office of Technology Transfer (OTT). (*Id.* at 8–9.) According to Plaintiff, Defendants knew that sdPhotonics shared ownership of certain patents related to Plaintiff's VCSEL technology with UCF, (*see* Dkt. 96-11), but nevertheless filed false documents with the United States Patent and Trademark Office (USPTO) claiming that UCF was the exclusive owner of these patents, (*see, e.g.*, Dkts. 96-12, 96-14).

Plaintiff concedes that as a condition of his employment with UCF, he executed an Intellectual Property Agreement that granted UCF title to inventions "in the field or discipline in which [he] [was] employed by [UCF]" or which were "made with the use of [UCF's] [s]upport." (Dkt. 96-4.) This agreement also "assign[ed] to [UCF] . . . any and all rights in such [i]nventions that [we]re invented and/or conceived at any time during" Plaintiff's employment with UCF. (*Id.*) However, UCF Regulation 2.029(4)(d) states that if UCF "asserts its rights in [an] [i]nvention," it will bear "all costs and expense of patenting" the invention. (Dkt. 96-3 at 8.) In light of evidence that he split the costs with UCF to patent some of his inventions, (*see* Dkt. 96-7), Plaintiff claims that he is a co-owner of these patents, and thus, Defendants' filings with the USPTO, made under oath, are false and constitute perjury, (Dkt. 96 at 9–20).

Around September 2019, Plaintiff contacted UCF and Sovinski after discovering the filings, and neither denied that the filings "contain[ed] false statements." (*Id.* at 27.) Sovinski and her supervisor, Youndy C. Cook, "informed . . . Plaintiff that UCF wished to resolve the matter" and "proposed . . . formally

assign[ing] any remaining UCF . . . ownership rights to sdPhotonics." (*Id.* at 27–28.) However, Sovinski and Shtrom then began to file more false documents with the USPTO. (*Id.* at 29–30.) Plaintiff alleges that he was presented with two "fraudulent" agreements "designed to transfer ownership of [sdPhotonics]'s intellectual property to UCF" and that he was then threatened to sign the agreements "or else." (*Id.* at 30.) It was at this point that Plaintiff claims he began to be stalked by the United States government. (*Id.* at 31.) In Plaintiff's words, he

> apparently "stepped into" organized crime operating within the [United States] and state governments . . . by correcting the science at DARPA and from the universities that brought forth retaliation[] and by making high value oxide and oxide-free VCSEL inventions that the military and universities were apparently able to "sell" to elected officials alleged to be operating organized crime within the [United States] and state governments of at least Florida, Illinois[,] and Texas.

(*Id.* at 39–40.) Plaintiff asserts that he is being "assault[ed]" and "intensely stalked with . . . high-power RF [(radio frequency)] directed energy transmitters and other physical endangerments." (Dkt. 41-1 at 5.) Allegedly, he has been driven from his home due to the high-power RF being "beamed onto it" and has been forced to stay at various hotels. (Dkt. 91-1 at 2.) Because his symptoms, which include "ear-ringing or ear-whistling[ and] headaches," persist, Plaintiff postulates that RF is being "continuously shot . . . through the walls, ceiling[s,] or floor[s] of adjacent hotel rooms." (*Id.* at 3.) He also claims that contact poisons are being "placed in [his] bedding." (*Id.*)

On August 2, 2023, Plaintiff filed his original complaint, which was dismissed without prejudice as a shotgun pleading. (Dkts. 1, 4.) He then filed an amended complaint before the court granted his motion to file the operative second amended complaint. (Dkts. 10, 37, 93.) Plaintiff filed the second amended complaint on July 1, 2024. (Dkt. 96.) In it, he raises seven counts. Counts I through V are claims of constitutional violations brought under 42 U.S.C. § 1983. Specifically, Plaintiff raises two First Amendment retaliation claims (Counts I and II), two procedural due process claims (Counts III and IV), and a takings claim (Count V). (*Id.* at 40–68.) Counts VI and VII are Florida law claims for Defendants' tortious interference with Plaintiff's business relationship with sdPhotonics. (*Id.* at 68–74.) Each of the seven counts is brought against both Defendants, except for Count II, which is raised solely against Sovinski. (*Id.* at 40–74.) As relief, Plaintiff seeks compensatory and punitive damages, legal fees, and a declaration "attesting to Defendants' improper filing of retroactive ownership documents on Plaintiff's oxide-free VCSEL inventions." (*Id.* at 74–77.)

## APPLICABLE STANDARDS

In deciding a motion to dismiss for failure to state a claim, a court "accept[s] the allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiff." *Henley v. Payne*, 945 F.3d 1320, 1326 (11th Cir. 2019). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[D]etailed factual allegations" are generally not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

Although courts "give liberal construction" to documents filed by pro se plaintiffs, *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007), pro se plaintiffs are still "required . . . to conform to procedural rules," *Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002). *See Cummings v. Dep't of Corr.*, 757 F.3d 1228, 1234 n.10 (11th Cir. 2014) ("The right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law." (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981))).

## ANALYSIS

Defendants argue that Counts I through V must be dismissed with prejudice because Defendants are entitled to qualified immunity. (Dkt. 103 at 4–19.) They also argue that Counts I and II are barred by the statute of limitations. (*Id.* at 12–16.) Because the court agrees that Defendants are entitled to qualified immunity, it does not reach Defendants' argument that Counts I and II are time-barred. *See also My24HourNews.com, Inc. v. AT&T Corp.*, 791 F. App'x 788, 798 (11th Cir. 2019) ("A statute of limitations bar is an affirmative defense, and plaintiffs are not required to negate an affirmative defense in their complaint. As a result, a dismissal for failure to state a claim on statute of limitations grounds is appropriate only if it is apparent from

the face of the complaint that the claim is time-barred." (cleaned up)); *accord United States ex rel. Hunt v. Cochise Consultancy, Inc.*, 887 F.3d 1081, 1085 (11th Cir. 2018). Because the court finds that Plaintiff's federal claims are due to be denied with prejudice, the court declines to exercise supplemental jurisdiction over his two remaining state law claims.

### A. Qualified Immunity

Defendants maintain that as employees of UCF, a public university, they are entitled to qualified immunity as to Plaintiff's section 1983 claims.[2] (*Id.* at 4–19.) "Qualified immunity shields government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Carruth v. Bentley*, 942 F.3d 1047, 1053 (11th Cir. 2019) (quotation omitted). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284

---

[2] The parties do not dispute that Defendants are state employees who acted under color of state law at all times relevant to this matter. (*See* Dkt. 96 at 8–9; Dkt. 103 at 8–9.) *See Rusovici v. Univ. of Cent. Fla. Bd. of Trs.*, No. 6:22-cv-2172-ACC-EJK, 2023 WL 9190224, at *5 (M.D. Fla. Dec. 9, 2023) ("Associate Dean Verduin argues that she was acting within the scope of her discretionary authority in denying Plaintiff's request for an 'informal hearing.' Plaintiff does not dispute this; he alleges that Verduin is employed by UCF, and her 'actions and omissions' were undertaken within the scope of her employment with UCF. Because Verduin was acting within the scope of her discretionary authority as an associate dean when she denied Plaintiff's request, the burden shifts to Plaintiff to show that Verduin violated a 'clearly established' constitutional right." (internal citation omitted)); *Harris v. Dist. Bd. of Trs. of Polk Cmty. Coll.*, 9 F. Supp. 2d 1319, 1324 (M.D. Fla. 1998) ("[The] plaintiffs allege that [the defendant] was acting in her official capacity as President of [a state community college]. . . . There is no dispute between the parties that [the defendant] was acting under the color of state law. Therefore the [c]ourt finds that [the] plaintiffs have sufficiently alleged that [the defendant] was acting under the color of state law at the time of the alleged actions.").

F.3d 1188, 1194 (11th Cir. 2002) (quotation omitted), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009); *accord Carruth*, 942 F.3d at 1054. "To invoke the defense of qualified immunity, a government official must have been acting within the scope of his 'discretionary authority' when the allegedly wrongful acts occurred." *Spencer v. Benison*, 5 F.4th 1222, 1230 (11th Cir. 2021). "After a government official establishes that he was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to show that the official's conduct (1) violated federal law (2) that was clearly established at the relevant time." *Id.*

### 1. Scope of Defendants' Discretionary Authority

To prove that they were acting within the scope of their discretionary authority, Defendants were required to show that they acted (1) "pursuant to the performance of [their] duties" and (2) "within the scope of [their] authority." *Id.* That is, they were required to show that they were "performing a legitimate job-related function . . . through means that were within [their] power to utilize." *Id.* at 1230–31. "In applying each prong of this test, [the court] look[s] to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Est. of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018) (quoting *Mikko v. City of Atlanta*, 857 F.3d 1136, 1144 (11th Cir. 2017)). "[A] court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer

perimeter of an official's discretionary duties." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998) (quotation omitted). The discretionary authority requirement "is not difficult to satisfy." *Marbut v. Phillips*, No. 1:22-cv-00776-VMC, 2024 WL 4579911, at *7 (N.D. Ga. Sept. 30, 2024) (citing *Hinson v. Bias*, 927 F.3d 1103, 1116 (11th Cir. 2019)).

Plaintiff contests Defendants' entitlement to qualified immunity solely on the basis that they acted "far outside the perimeter of their discretionary authorit[y]."[3] (Dkt. 109 at 7; *see* Dkt. 96 *passim*.) He contends that Defendants' actions violated UCF's regulations "and other agreements" and were therefore "outside the scope of their discretionary job duties." (Dkt. 96 at 41; *accord id.* at 47, 51, 53, 57, 59.) This argument misses the mark. "[A]t this stage in the analysis, [the court] temporarily put[s] aside the fact that [the official's actions] may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Carruth*, 942 F.3d at 1055 (quotation omitted). This analysis requires the court to "strip out the allegedly illegal conduct." *Spencer*, 5 F.4th at 1231; *see Harbert Int'l*, 157 F.3d at 1282 ("The inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act. Framed that way, the inquiry is no more than an 'untenable' tautology.'");

---

[3] Plaintiff also emphasizes that Defendants' actions were with regard to their "ministerial duties." (*See* Dkt. 109 at 5–7.) To the extent he believes that qualified immunity does not extend to ministerial duties, Plaintiff is mistaken. *See Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004) ("In the qualified immunity context . . . we appear to have abandoned th[e] discretionary function/ministerial task dichotomy. . . . [F]or purposes of qualified immunity, a governmental actor engaged in purely ministerial activities can nevertheless be performing a discretionary function." (quotation omitted)).

*Carruth*, 942 F.3d at 1055 ("A plaintiff cannot plead around qualified immunity simply by saying that the official was animated by an unlawful purpose. The exception would swallow the rule.").

Once these allegations are removed, the court is left only with Plaintiff's allegations that Defendants filed documents with the USPTO on behalf of UCF and that Sovinksi sought to terminate Plaintiff's lease with UCF. These purported injuries fall squarely within the discretionary authority vested in Defendants. *See Harbert Int'l*, 157 F.3d at 1282 ("The scope of immunity should be determined by the relation of the [injury] complained of to the duties entrusted to the officer." (quotation omitted)). As UCF's Deputy General Counsel for Research, Sovinski plainly had the requisite authority to sign filings to the USPTO and to terminate Plaintiff's lease on behalf of the University. *See About – UCF General Counsel*, Univ. of Cent. Fla., https://generalcounsel.ucf.edu/about/ (last visited Feb. 18, 2025) ("The chief responsibility of the General Counsel's office is to represent the University of Central Florida . . . in all forms of litigation or legal disputes.");[4] *cf. Watson v. Fla. Jud. Qualifications Comm'n*, No. 14-60306-Civ-COOKE/TORRES, 2017 WL 3218163, at *8 (S.D. Fla. July 28, 2017) ("There is no reason to think that signing an employment contract is outside the scope of [the defendant]'s authority as General Counsel to the [Judicial Qualifications Commission]."). Similarly, Shtrom, as Director of the OTT,

---

[4] The court takes judicial notice of UCF's website. *See* Fed. R. Evid. 201(b)(2); *Mawulawde v. Bd. of Regents of Univ. Sys. of Ga.*, No. CV 105-099, 2007 WL 2460774, at *8 n.10 (S.D. Ga. Aug. 24, 2007) ("The [c]ourt may take judicial notice of the Medical College of Georgia's website, which constitutes a matter of public record." (collecting cases)).

had the authority to sign an assignment of a patent on behalf of the UCF Board of Trustees. *See About the Office of Technology Transfer*, Univ. of Cent. Fla., https://tt.research.ucf.edu/about-ott/ (last visited Feb. 18, 2025) ("[T]he [OTT] . . . is responsible for managing the University of Central Florida's . . . intellectual property assets . . . ."); *see McLaughlin v. Fla. Int'l Univ. Bd. of Trs.*, 533 F. Supp. 3d 1149, 1176 (S.D. Fla. 2021) (determining that the defendant "was acting within the scope of his discretionary authority because all the allegations against him relate[d] to him carrying out his" official duties, which as a professor included "instructing a classroom, grading exams, and serving on an academic dismissal committee").

Indeed, as Defendants claim, (Dkt. 103 at 7–8), outside of his allegations that Defendants were acting contrary to law, Plaintiff essentially concedes that Defendants were acting within their discretionary authority and pursuant to their roles with UCF. (*See* Dkt. 96 at 6 ("[A]s part of UCF's role in the military's alleged perjury scheme with the [USPTO], [Defendants] began filing false documents with the USPTO . . . ."); *id.* at 19 ("Sovinski ma[de] her USPTO filing . . . while acting under the color [of] the authority of her position as UCF's Deputy General Counsel for Research . . . ."); *id.* at 66–67 ("[Defendants] took their actions of their admitted perjury with the USPTO to obtain exclusive use of the patents and patent applications at issue in this [c]omplaint for their own UCF use and for military use, and as part of a much larger bribery scheme involving high ranking [United States] elected and appointed federal officials.").)

In sum, the court determines that Defendants' conduct was at the very least "within, or reasonably related to, *the outer perimeter* of [their] . . . discretionary duties." *Mikko*, 857 F.3d at 1144.

### 2. Whether Qualified Immunity is Appropriate

Because Defendants have successfully demonstrated that they were acting within the scope of their discretionary authority, Plaintiff bears the burden "to show that qualified immunity is not appropriate." *Carruth*, 942 F.3d at 1054. This burden requires him to make two showings: (1) "that the defendants violated his constitutional rights" and (2) "that, at the time of the violation, those rights were clearly established . . . in light of the specific context of the case, not as a broad general proposition." *Stalley v. Cumbie*, 124 F.4th 1273, 1284 (11th Cir. 2024) (quotation omitted). Because the court may consider these prongs in either order, it begins with the clearly-established prong, and because Plaintiff has failed to carry his burden under this prong, the court does not reach the second. *See Gaines v. Wardynski*, 871 F.3d 1203, 1208 (11th Cir. 2017) ("[The court] may decide these issues in either order, but, to survive a qualified-immunity defense, [the plaintiff] must satisfy both showings." (quotation omitted)).

### a) Clearly Established

A plaintiff in the Eleventh Circuit can satisfy his burden under the clearly-established prong in three ways:

> First, the plaintiff can point to a materially similar case decided at the time of the relevant conduct by the Supreme Court, the Eleventh Circuit, or the relevant state supreme

> court. This first method looks at the relevant case[]law at the time of the alleged violation that would have made it obvious to the officer that his actions violated federal law. The prior case[]law need not be directly on point, but an existing precedent must have placed the statutory or constitutional question beyond debate. Second, the plaintiff can identify a broader, clearly established principle that should govern the novel facts of the situation. Third, the plaintiff can show that the conduct at issue so obviously violated the Constitution that prior case[]law is unnecessary. . . . This third method, often referred to as the "obvious clarity" scenario, is a narrow exception to the normal rule that only case[]law and specific factual scenarios can clearly establish a violation.

*Stalley*, 124 F.4th at 1284 (quotation omitted). Plaintiff has provided no explicit argument as to this prong; instead, he appears to seek to rebut Defendants' claims of qualified immunity solely on the basis that they acted outside of their discretionary authority. (*See* Dkt. 96 at 41, 51, 57; Dkt. 109 at 4–11.) While a pro se complaint should be construed leniently, "this leniency does not give a court license to serve as de facto counsel for a [pro se] party, or to rewrite an otherwise deficient pleading [by a pro se litigant] in order to sustain an action." *GJR Invs. v. City of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), *overruled on other grounds by Iqbal*, 556 U.S. 662. It was Plaintiff's burden to demonstrate that Defendants violated clearly established law. *Harbert Int'l*, 157 F.3d at 1281. In the absence of any argument as to this point, the court cannot find that Plaintiff has satisfied his burden. *See Miarka v. City of Gulf Shores*, No. 17-243-CG-N, 2017 WL 3612867, at *7 (S.D. Ala. July 31, 2017) ("While [the p]laintiff cites the language of the Fourth Amendment and § 362(a)(3) [of the United States Bankruptcy Code], [the p]laintiff provides no

reasoning as to how the conduct of the officers in this action is 'so bad' that it could not be lawful." (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002), *abrogated in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009))).

To the extent Plaintiff argues that Defendants violated clearly established law because their actions allegedly ran afoul of UCF regulations and "federal and state perjury laws," (Dkt. 96 at 41), this argument is unavailing. Plaintiff specifically points to UCF regulation 2.029(4)(d), which outlines UCF's cost-sharing scheme for patent applications, (*see* Dkt. 96-3 at 8), and Florida and federal statutes proscribing perjury, (*see* Dkt. 109 at 10 (citing Fla. Stat. § 837 and 18 U.S.C. § 1001)). Though Plaintiff does not address it, caselaw does support the principle that "the words of the pertinent federal statute or federal constitutional provision . . . [may] be specific enough to establish clearly the law applicable to particular conduct and circumstances to overcome qualified immunity, even in the *total absence of case[]law*." *Vinyard*, 311 F.3d at 1350. "For example, the words of a federal statute or federal constitutional provision may be so clear and the conduct so bad that case[]law is not needed to establish that the conduct cannot be lawful." *Id.* However, as one example of "obvious clarity," *id.*, this principle is a narrow exception to the rule requiring analogous caselaw to demonstrate that a constitutional violation was clearly established. *See Gaines*, 871 F.3d at 1209 (noting that obvious clarity cases "do not often arise" and collecting cases). Absent argument from Plaintiff, the court discerns no basis to apply the principle. Moreover, even if Plaintiff had argued this issue, he has not demonstrated that violation of Florida and federal perjury law "so obviously

- 14 -

violate[s] the constitution that prior case[]law is unnecessary." *Id.* (quotation omitted). Plaintiff cannot carry his burden under the clearly-established prong simply by saying that Defendants' conduct violated a clearly established statute—instead, he must show that violation of the statute clearly violated the constitutional rights under which his claims arise. *See Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291–92 (11th Cir. 2009) (explaining that a right "may be clearly established for qualified immunity purposes" if the defendant acted with "conduct so egregious that a *constitutional right* was clearly violated" (emphasis added)).

The Supreme Court's decision in *Davis v. Scherer* is helpful on this point. There, the Court declined to adopt a categorical rule advanced by the appellee under which an official whose "conduct . . . contravene[d] a statute or regulation" would automatically forfeit the official's entitlement to qualified immunity. 468 U.S. 183, 193 (1984); *see id.* ("Appellee urges . . . that a defendant official's violation of a clear statute or regulation, although not itself the basis of suit, should deprive the official of qualified immunity from damages for violation of other statutory or constitutional provisions."). The Court held that "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision," *id.* at 194, reasoning as follows:

> [I]t is an appealing proposition that the violation of [applicable statutes and regulations] . . . is a circumstance relevant to the official's claim of qualified immunity. But in determining what circumstances a court may consider in deciding claims of qualified immunity, we choose between the evils inevitable in any available alternative. Appellee's submission, if adopted, would disrupt the balance that our

> cases strike between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties. . . . [U]nder appellee's submission, officials would be liable in an indeterminate amount for violation of any constitutional right—one that was not clearly defined or perhaps not even foreshadowed at the time of the alleged violation—merely because their official conduct also violated some statute or regulation,

*id.* at 195. While the *Davis* Court acknowledged that "officials may lose their immunity by violating clearly established statutory . . . rights," it limited this exception "to the extent that there is a clear violation of the statutory rights *that give rise to the cause of action*." *Id.* at 194 n.12 (emphasis added).

Thus, to the extent that Plaintiff looks to UCF's regulations or to state and federal perjury statutes to overcome Defendants' qualified immunity, this effort fails because he does not show that violation of these statutes constitutes a clearly established violation of the constitutional provisions under which his federal claims arise and because his federal claims do not actually arise under those statutes he claims were violated. Accordingly, even if Plaintiff had raised this argument, it would fail as a matter of law. *See Thomas v. Buckner*, No. 2:11-CV-245-WKW, 2011 WL 4071948, at *9 (M.D. Ala. Sept. 13, 2011) ("Th[e] reasoning [in *Davis*] solidly forecloses [the p]laintffs' clearly established argument, which, in its entirety, is that the alleged federal constitutional due process right to a hearing is clearly established because a section of the Alabama Code and various [Department of Human Resources] regulations potentially require such a hearing under state law. This argument is insufficient as a matter of law to carry [the p]laintiffs' burden of demonstrating that the right to a

- 16 -

hearing was clearly established."); *Fernandez-Torres v. Watts*, No. 2:16-cv-24, 2017 WL 9485591, at *3 (S.D. Ga. Jan. 30, 2017) (finding unpersuasive the "[p]laintiff['s] attempt[] to use various Bureau of Prisons' Program Statements and federal regulations as evidence that [his] right [to Santeria beads from an unapproved source] was clearly established at the time the violations occurred" in light of *Davis*'s holding that "officials sued for violation of constitutional rights[] do not forfeit their immunity by violating some other statute or regulation").

If instead Plaintiff sought to rely upon the broad principles of law set forth in his complaint to satisfy his burden on this point, it is well established that such pronouncements are insufficient. (*See, e.g.*, Dkt. 96 at 40–41 ("A citizen has the right to be free from governmental action taken to retaliate against the citizen's exercise of protected speech, or to deter the citizen from exercising those rights in the future, under the [First Amendment] . . . .").) *See Harbert Int'l*, 157 F.3d at 1284 ("[The plaintiff] has set forth a general principle of law, but we have held time and again that clearly established principles of law will seldom if ever suffice to strip a defendant of qualified immunity."); *Dolihite v. Maughon*, 74 F.3d 1027, 1040–41 (11th Cir. 1996) ("A plaintiff must establish more than broad legal truisms; he or she must demonstrate that the law fixed the contours of the right so clearly that a reasonable official would have understood his acts were unlawful.").

Plaintiff's only remaining option to satisfy this prong was to adduce caselaw from the United States Supreme Court, the Eleventh Circuit, or the Florida Supreme Court "materially similar" to the instant case. *Gaines*, 871 F.3d at 1209 (quotation

omitted). However, Plaintiff does not cite to any caselaw demonstrating that the constitutional violations he asserts were clearly established. (*See* Dkt. 96; Dkt. 109 at 4–11.) While he does cite the Supreme Court's decisions in *Davis* and *Mikko* in his response to Defendants' motion, he cites these decisions only to support his argument that Defendants were acting outside the scope of their discretionary authority. (*See* Dkt. 109 at 7–8, 10.) This citation is insufficient to satisfy his burden. *See Vielma v. Gruler*, 808 F. App'x 872, 879–80 (11th Cir. 2020) (determining that the plaintiffs had not demonstrated a clearly established law where they "failed to cite any case addressing materially similar facts that clearly establishe[d] the existence of the duty that [the p]laintiffs assign[ed] to [the defendant]"); *Puglia v. Nienhuis*, No. 8:22-cv-1954-VMC-CPT, 2023 WL 2743526, at *8 (M.D. Fla. Mar. 31, 2023) ("[The plaintiff] cites no case[]law at all in his discussion of whether it was clearly established that [the d]efendants' actions were unconstitutional. This failure to carry his burden also supports the grant of qualified immunity for the individual [d]efendants." (citation omitted)).

The court thus finds that Plaintiff has not carried his burden to show that the constitutional rights he claims were violated were clearly established at the time of Defendants' actions. Therefore, because Defendants were acting within the scope of their discretionary authority at all times relevant to Plaintiff's claims against them, and because Plaintiff has not borne his burden to show that qualified immunity is inappropriate here, Defendants are entitled to qualified immunity. *Carruth*, 942 F.3d at 1054. Accordingly, Defendants' motion is granted as to Counts I through V.

## B. Supplemental Jurisdiction

Under 28 U.S.C. § 1367(c), a district court has discretion to "decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." Because the court has determined that all of Plaintiff's claims over which this court has original jurisdiction, Counts I through V, are due to be dismissed with prejudice, the court declines to continue to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, Counts VI and VII. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."). Indeed, the Eleventh Circuit has affirmatively counseled district courts to decline to exercise supplemental jurisdiction in such situations. *See Silas v. Sheriff of Broward Cnty.*, 55 F.4th 863, 866 (11th Cir. 2022) ("Although the district court has discretion, concerns of federalism— namely, of federal courts of limited jurisdiction weighing in on state law—counsel in favor of dismissing state[ ]law claims after the federal claims are dismissed."); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial.").

Accordingly, Counts VI and VII are due to be dismissed without prejudice. This dismissal should not work to Plaintiff's disadvantage should he elect to bring Counts VI and VII in state court because the period of limitations for any of these claims is tolled during the pendency of this action. *See* 28 U.S.C. § 1367(d).

## CONCLUSION

Accordingly:

1. Defendants' Amended Joint Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt. 103) is **GRANTED in part and DENIED in part**.

2. Counts I, II, III, IV, and V of Plaintiff's Second Amended Complaint are **DISMISSED with prejudice**.

3. Counts VI and VII of Plaintiff's Second Amended Complaint are **DISMISSED without prejudice** under 28 U.S.C. § 1367(c)(3).

4. The Clerk is **DIRECTED** to enter judgment in favor of Defendants as to Counts I, II, III, IV, and V, to terminate any pending deadlines and motions, and to close this case.

**ORDERED** in Orlando, Florida, on February 18, 2025.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Unrepresented Party
Counsel of Record